MacDougall *v.* Ford Motor Company, Appellant.

Argued April 16, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*James P. McKenna, Jr.,* with him *Dickie, McCamey & Chilcote,* for appellant.

*H. N. Rosenberg,* with him *Rosenberg & Kirshner,* for appellees.

OPINION BY SPAULDING, J., June 13, 1969:

This is an appeal by Ford Motor Company, appellant, from a judgment entered upon a verdict for appellees Frank H. and Anne MacDougall. Appellant contends the court below erred in denying a motion for judgment n.o.v.

On April 17, 1962, a 1962 Comet station wagon owned and driven by appellees was involved in an accident on the Pennsylvania Turnpike. Appellees brought a trespass action against appellant, the manufacturer, and Thompson Lincoln Mercury Company, the retail seller, to recover property damage.

At trial, appellees presented only the deposition of Mrs. MacDougall and testimony of Herbert Summers, an expert witness. From wife-appellee's deposition, a jury could find the following facts: The car was purchased on March 19, 1962, and prior to April 17 had been driven only 143 miles, never at speeds in excess of 30 m.p.h. On April 17 appellees set out on a trip in

it to Rhode Island via the Turnpike. Mrs. MacDougall took over the driving after traveling about 35 miles on the Turnpike and attempted to travel at 60 m.p.h. At this speed she was unable to control the car. As she described it: "A. . . . I started out and gradually got up to 60, but the car was handling so badly that I dropped back to 50. Q. When you say it handled badly at 60, what do you mean by that? A. I thought the wheel simply did not respond the way I expected it to. I had difficulty in keeping it going on an even course."

She reaffirmed this erratic behavior on cross-examination: "Q. What was the difficulty when you got up to 60 miles an hour? A. Well, even at 50 miles an hour it was handling badly and it seemed to handle better at 50 than 60. It was difficult to keep it on a straight line going on the road. It was necessary continually to manipulate the wheel, and it did not even respond nicely. Q. Did the steering seem loose? A. Sometimes it did; sometimes it seemed to stick."

The accident occurred after Mrs. MacDougall had driven 50 miles. While approaching a slight right-hand curve, she pulled into the left lane to pass. As the Comet pulled out, the steering difficulty became more severe. She could not control the steering wheel and the car went from the left lane onto the medial strip. On the first attempt to regain the roadway, the steering failed to respond. On the second attempt, the car oversteered, swerving across both eastbound traffic lanes. Mrs. MacDougall was unable to correct the oversteering and consequently the car rolled over on the berm.

Appellees' expert, Mr. Summers, examined the steering assembly to determine the source of the steering malfunction and found three specific mechanical defects. Metal flakes were present in the gear box; the bearing on the steering shaft was "tight"; and the "high point" on the sector shaft was adjusted too tight-

ly. In Summer's opinion, the metal flakes, if lodged in the gear mechanism, could cause temporary steering tightness, as could the tight bearing on the steering shaft.

The function of the "high point" on the sector shaft is to stabilize steering during straight forward driving. Summers indicated that the improper adjustment to the "high point" would cause the car to oversteer when the wheel was turned and would require the driver to make constant steering corrections to maintain a straight forward course. While not giving an opinion as to whether the metal flakes or tight bearings prompted the accident, Summers suggested that the adjustment to the sector shaft was "very likely" to cause the accident.

Appellant argues that appellees have failed to meet their burden of proof of causation as Summers did not state unequivocally that the specific defects in the steering assembly were the cause of the accident.

Appellant's liability is governed by Restatement of Torts, Second, §402A, which provides: "One who sells any product in a defective condition unreasonably dangerous to the user . . . is subject to liability for physical harm thereby caused to the ultimate user. . . ." Mrs. MacDougall's testimony permits a jury finding that a malfunction of the steering mechanism caused the accident. As the causal connection between the accident and the malfunction is established, appellant's contention fails if a mechanical malfunction evidences a "defective condition" within the meaning of §402A.

Unless able to rely on the doctrine of res ipsa loquitur or exclusive control, a plaintiff asserting liability on grounds of negligence must connect injury with a specific defect in the manufacture or design of a product. *Loch v. Confair*, 372 Pa. 212, 93 A. 2d 451 (1953). Consequently, if the evidentiary standards of

negligence govern §402A actions, mere proof of a malfunction would not sustain the verdict for appellees.

However, in *Greco v. Bucciconi Engineering Co.,* 283 F. Supp. 978 (W.D. Pa. 1967), *aff'd,* 407 F. 2d 87 (3d Cir. 1969), the District Court for the Western District of Pennsylvania, in construing Pennsylvania law, held that §402A actions are governed by the evidentiary standards of warranty law rather than negligence and that under these standards the occurrence of a mechanical malfunction evidences a "defective condition" without proof of the specific defect in design or assembly causing the malfunction. We find *Greco* to be a correct statement of Pennsylvania law.

Three landmark Pennsylvania decisions on products liability clearly affirm *Greco's* finding that the elements of breach of warranty and §402A are identical. In *Miller v. Preitz,* 422 Pa. 383, 221 A. 2d 320 (1966), Justice COHEN, writing for the Court, recognized the kinship between warranty and strict tort liability, noting that abandonment of the privity requirement would produce the same result as adoption of §402A. The concurring and dissenting opinions of Justices JONES and ROBERTS in *Miller* assert the identity of the elements of breach of warranty and strict tort liability in extensive analyses of §402A. *Webb v. Zern,* 422 Pa. 424, 220 A. 2d 853 (1966), which adopted §402A as Pennsylvania law, specifically relied upon the discussion of §402A in these concurring and dissenting opinions.

The relationship of warranty and strict tort liability was forcefully reemphasized in *Kassab v. Central Soya,* 432 Pa. 217, 246 A. 2d 848 (1968), which reversed *Miller v. Preitz, supra*: "To permit the result of a lawsuit to depend solely on the caption atop plaintiff's complaint is not now, and has never been, a sound resolution of identical controversies.

"[W]ith Pennsylvania's adoption of Restatement 402a, the same demands of legal symmetry which once supported privity now destroy it. . . .[I]n the present case, for example, appellants' complaint alleging that their property . . . was damaged . . . by virtue of the physical harm caused when these animals ate appellee-Soya's defective feed would have been sufficient to state a valid cause of action had it been captioned 'Complaint in Trespass.' However, because appellants elected to style their complaint as one in assumpsit for breach of warranty under the code, the requirement of privity would prevent these identical allegations from making out a good cause of action. This dichotomy of result is precisely the same evil which, prior to the Restatement, prevented the abolition of privity. It now compels this abolition." 432 Pa. at 229, 230.

Proof of the specific defect in construction or design causing a mechanical malfunction is not an essential element in establishing breach of warranty. "When machinery 'malfunctions', it obviously lacks fitness regardless of the cause of the malfunction. Under the theory of warranty, the 'sin' is the lack of fitness as evidenced by the malfunction itself rather than some specific dereliction by the manufacturer in constructing or designing the machinery." *Greco v. Bucciconi Engineering Co., supra,* at 982. *Cf., Frantz Equipment Co. v. The Leo Butler Co.,* 370 Pa. 459, 88 A. 2d 702 (1952).

Although plaintiffs in warranty actions have ordinarily sought to establish the cause of a malfunction, liability has been sustained in the absence of proof of a specific defect. In *Frigidinners, Inc. v. Branchtown Gun Club,* 176 Pa. Superior Ct. 643, 109 A. 2d 202 (1954) this Court held that a breach of warranty occurred when a food freezer failed to become sufficiently cold to preserve food. This breach was established in the absence of any evidence of a specific defect in the design or assembly of the freezer.

This issue was specifically considered in *Jarnot v. Ford Motor Co.*, 191 Pa. Superior Ct. 422, 156 A. 2d 568 (1959). In *Jarnot*, a tractor-trailer crashed due to a break in a kingpin in the tractor. Although the plaintiff did attempt to show the specific reason for the kingpin's failure, we stated that liability did not rest upon proof of the specific defect in the pin causing the break.

*Bialek v. Pittsburgh Brewing Co.*, 430 Pa. 176, 242 A. 2d 231 (1968), indicates that proof of a specific defect is not essential in establishing §402A liability. In *Bialek*, plaintiff sought to recover under §402A for injuries caused by an exploding bottle. While holding that expert testimony to establish the cause of the bottle's failure was proper, the Court indicated that it was not a necessary element of plaintiff's case: "Both plaintiff and Leon Dorsey testified that the bottle exploded spontaneously. Their testimony alone, given the fact that an explosion was not a physical impossibility, was sufficient to make the issue a jury question." 430 Pa. at 184.

This evidentiary standard is fully in accord with that applied in other jurisdictions. *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A. 2d 69, 75 A.L.R. 2d 1 (1960), recognized as a leading case in products liability in *Miller v. Preitz, supra*, is directly on point factually. As in the instant case, an automobile accident resulted from the failure of the steering mechanism of a new automobile. Plaintiff's expert testified only that "something down there had to drop off or break loose" to cause the steering malfunction. This testimony was clearly insufficient to link the accident with a specific defect in design or assembly. The *Henningsen* Court held that the evidence supported an inference that the car was unsuitable for ordinary use. Liability has been established on warranty or §402A grounds where proof was limited to evidence of

malfunction in *Cintrone v. Hertz Truck Leasing*, 45 N.J. 434, 212 A. 2d 769 (1965); *Vandercooke & Son, Inc. v. Thorpe*, 344 F. 2d 930 (5th Cir., 1965), *rev'g on reh.*, 322 F. 2d 638 (5th Cir. 1963); *Cordle v. Renault, Inc.*, 361 F. 2d 332 (6th Cir. 1966); and, *Greco v. Bucciconi Engineering Co., supra.*

The evidentiary requirements of negligence law demand proof that injury is proximately caused by a specific defect in design or construction because liability hinges upon whether the accident could have been avoided by the exercise of reasonable care. In contrast, the concern of both §402A and warranty law is with the fitness of the product, not the conduct of the producer as measured by due care. While proof of a mechanical malfunction does not support an inference of the absence of due care in the construction or design of equipment, it is circumstantial evidence of the unfitness of the equipment. Accordingly, we hold that the occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a "defective condition" within the meaning of §402A, as it is evidence of lack of fitness for warranty liability.

In the instant case, Mrs. MacDougall's testimony of the bizarre steering action both before and when the accident occurred establishes a mechanical malfunction in the absence of abnormal use which prevented her from maintaining control of the car. We find that the most reasonable inference to be drawn from this proof is that a defective condition in the Comet proximately caused the accident. Hence, the issue of causation was properly left to the jury. *Smith v. Bell Telephone Co.*, 397 Pa. 134, 153 A. 2d 477 (1959). Moreover, although proof of specific steering defects was not a prerequisite to establishing liability, we note that Summer's testimony that the improper adjustment to the shaft would produce the precise steering abberations experienced

by appellees lends definite additional support to this inference.

As appellant does not contend that appellees failed to prove any of the other elements of §402A liability, the court below properly refused the motion for judgment n.o.v.

The judgment of the court below is affirmed.