**PENNSYLVANIA GLASS SAND CORPORATION, Plaintiff,**

v.

**CATERPILLAR TRACTOR COMPANY, Defendant.**

Civ. No. 79–735.

United States District Court, M. D. Pennsylvania.

Aug. 22, 1980.

As Corrected Nov. 3, 1980.

Christopher C. Fallon, Jr., Cozen, Begier & O'Connor, Philadelphia, Pa., for plaintiff.

Clyde McIntyre, C. Grainger Bowman, Harrisburg, Pa., Theodore W. Flowers, White & Williams, Philadelphia, Pa., for defendant.

## OPINION

MUIR, District Judge.

Pennsylvania Glass Sand Corporation commenced this diversity action seeking to recover damages caused by a fire which destroyed a front end loader manufactured by Defendant Caterpillar Tractor Company. Pennsylvania Glass Sand's complaint alleges liability on the basis of strict liability in tort, Restatement of Torts, (Second) § 402A and negligence. On July 28, 1980, Caterpillar filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56, accompanied by a brief, arguing that Pennsylvania Glass Sand's remedies are limited to those provided by the Uniform Commercial Code, 13 Pa.C.S.A. § 2101 et seq. Pennsylvania Glass Sand filed a brief in opposition to the motion on August 4, 1980 and Caterpillar filed a reply brief on August 8, 1980. For the reasons which follow, the Court will grant Caterpillar's motion for summary judgment.

For the purposes of this motion, the Court will assume the following to be the facts. On November 1, 1971 Pennsylvania Glass Sand purchased a 922 front end loader from Caterpillar at a cost of approximately $140,000. On September 20, 1975, a fire of unknown origin broke out in the vicinity of the lower portion of the cab of the front end loader and the fire severely damaged the machinery causing Plaintiff damage in excess of $100,000 which is made up of the loss of the value of the front end loader and the cost to rent substitute equipment.

Plaintiff contends that the front end loader was negligently designed or defective because it did not contain a fire suppression system or nonflammable hydraulic fluids. It is the Plaintiff's position that had the front end loader been so equipped or had the Defendant provided adequate warnings concerning the risk of fire, Plaintiff would not have suffered the damages it has regardless of the cause of the fire. The issue to be decided on this motion for summary judgment is whether Pennsylvania law, which the parties agree is applicable, permits recovery for Pennsylvania Glass Sand's economic losses in an action sounding in tort or whether Pennsylvania Glass Sand's remedies are limited to those available under the UCC for breach of warranty and subject to whatever limitation of remedies for breach of warranty the parties may have agreed upon.

The Pennsylvania Supreme Court has not decided the issue raised in this case. "Under these circumstances, it is the duty of the federal court to predict how the state's highest court would decide the question were [the latter] adjudicating the matter." *Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corporation*, 626 F.2d 280 at 285 (3d Cir. 1980). Not one of the Pennsylvania cases called to the Court's attention addresses the issue raised in this case. There are Pennsylvania decisions which point the direction in which Pennsylvania law is travelling.

In *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), the Supreme Court of

Pennsylvania held that a plaintiff need not be in privity of contract with the defendant in order to maintain an action for breach of implied warranty under the Uniform Commercial Code. In removing the privity requirement, the Court noted that under the facts of that case Plaintiff could maintain an action under § 402A and, therefore, the Plaintiff's right to recover should not depend on the label attached to the lawsuit. *Kassab v. Central Soya*, 432 Pa. at 228–230, 246 A.2d 848. The *Kassab* decision recognized that the scope of liability created by § 402A is coextensive with the liability for breach of warranty under the Uniform Commercial Code.

This relationship between the scope of liability under the two theories was recognized by the Superior Court of Pennsylvania in *MacDougall v. Ford Motor Company*, 214 Pa.Super.Ct. 384, 257 A.2d 676 (1969), when it held that in a § 402A action "the occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a 'defective condition' within the meaning of § 402A, as it is evidence of lack of fitness for warranty liability." *MacDougall v. Ford Motor Co.*, 214 Pa.Super.Ct. at 391, 257 A.2d at 68. While *MacDougall* involved damages to the defective product, the case was brought by a purchaser of a consumer chattel, an automobile, and, therefore, is distinguishable from this case insofar as whether § 402A is applicable at all. The case is further evidence that under Pennsylvania law, remedies under § 402A and the UCC are coextensive, assuming both are otherwise applicable.

Further evidence of Pennsylvania law on this subject is found in *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir. 1976), a diversity case decided under Pennsylvania law. *Posttape* involved a claim for damages caused when film sold by Eastman Kodak was flawed making it unusable for the commercial purposes of the plaintiff. In rejecting the plaintiff's argument that the case could be decided on a theory of products liability under § 402A, the Court stated that the flaw in the film in no way made it a threat to persons or tangible property. Although it was defective, it

could not by any stretch of the imagination be considered "unreasonably dangerous." Therefore, the question of liability under § 402A should not have been sent to the jury. *Posttape v. Eastman Kodak Co.*, 537 F.2d at 755.

The Court next considered the effect of a notice on the film which purported to limit Kodak's liability for defects in the film. The Court held that the Pennsylvania Supreme Court would conclude that the scope of such limitation would be governed by the Uniform Commercial Code "whether the claim be in tort or contract." *Posttape v. Eastman Kodak Co.*, 537 F.2d at 756.

*Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974), is not to the contrary. The Defendant in that case did not argue that § 402A was inapplicable. It argued only that the limitation of liability in the warranty excluded a claim based on § 402A. The Court of Appeals, therefore, did not have the occasion to address the issue raised in this case. The Court did, however, express the view that in cases involving commercial transactions between corporations of relatively equal standing contract, rather than tort principles, should be applicable. *See Keystone Aeronautics v. R. J. Enstrom Corp.*, 499 F.2d at 149 (3d Cir. 1974).

The Third Circuit Court of Appeals' most recent decision relating to this question is *Jones & Laughlin Steel Corporation v. Johns-Manville Sales Corporation*, 626 F.2d 280 (3d Cir. 1980). Although that case involved a determination of Illinois law, it is the Court's view that the Supreme Court of Pennsylvania would follow an analysis similar to that of the Court of Appeals in *Jones & Laughlin*. Although the Court of Appeals discussed two intermediate Illinois appellate court decisions in reaching its decision in *Jones & Laughlin*, the bulk of its discussion was related to the decision of the California Supreme Court in *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) and the policy considerations underlying the relationship of § 402A and the Uniform Commercial Code.

In *Seely* the plaintiff purchased a truck which subsequently overturned after a his-

tory of violent bouncing. The California Supreme Court held that since there were no personal injuries, Seely could proceed on a theory of breach of warranty but not one of strict liability. Chief Justice Traynor held that a manufacturer can properly be held responsible when its product is defective and the defect causes personal injury but cannot be held responsible when the defect only interferes with the Plaintiff's economic expectations unless the manufacturer agreed that the product was designed to meet the consumer's demands. *Seely v. White Motor Co.*, 63 Cal.2d at 18, 45 Cal. Rptr. 17, 403 P.2d 145.

It is important not to lose sight of the policies furthered by § 402A. That section, when used in cases involving injury to persons or property, other than the allegedly defective product, places the cost of such injuries on the manufacturer, the party best able to distribute the costs. Since a defective product may injure persons who have not purchased it, there is no price mechanism by which to insure such persons against the risk of loss. Consequently, there is no effective way to internalize the costs of the products which must include the risk that some products will be defective and cause injury. The imposition on manufacturers of strict liability for defective products accomplishes the cost internalization by placing the complete cost of injuries on the manufacturer who in turn can allocate a portion of its costs to its purchasers in the form of higher prices. *Jones & Laughlin Steel Corporation v. Johns–Manville Sales Corporation*, 626 F.2d 280 at 288 (3d Cir. 1980).

■ This theory is out of place when economic losses are involved. These losses result when the product does not perform at the level expected by the buyer and the seller and are often measured by the cost of repairing the infirmity or the difference in the value of the product as it exists and the value it would have had if it performed as expected. In such cases there are often consequential losses, such as lost profits or costs of renting substitute equipment. All these losses are almost always incurred by the owner of the product, not by persons who might happen to come in contact with it. The purchaser, particularly when it is a large corporation like Pennsylvania Glass Sand, can protect itself against the risk of unsatisfactory performance by bargaining for a warranty. Alternatively, it may decide to purchase the product for a lower price and forego warranty protection. Because persons other than the owner will not incur economic losses resulting from the product's poor performance, the costs associated with economic loss can be reflected in the price of the product. There is, therefore, no need to internalize these costs by a non-price mechanism such as strict liability. *Jones & Laughlin Steel Corporation v. Johns–Manville Sales Corp.*, at 289.

This reasoning applies regardless of the nature of the defect in the product. Whether the defect is one, as in *Posttape* which does not involve even a risk of physical injury or is one as alleged in this case and *Seely*, which poses a risk of physical injury, in both types of cases the actual loss suffered by the plaintiff was economic harm. Because of the policies underlying strict liability, it is not incongruous to permit, for example, the operator of the front end loader in question to sue in strict liability for any personal injuries he might have suffered while preventing Pennsylvania Glass Sand from using that theory or any tort theory to recover its economic losses. Because the operator had no dealings with Caterpillar, there is no price mechanism to internalize the costs of the product. He, therefore, requires the protection afforded by the tort law. Pennsylvania Glass Sand, however, was in a position to bargain with Caterpillar for a warranty if it thought it prudent to do so to protect itself from economic loss. It, therefore, may not rely on § 402A or negligence to bring its claims. *See Jones & Laughlin Steel Corp. v. Johns–Manville Sales Corporation*, 626 F.2d 280 at 289–290 (3d Cir. 1980).

■ The Court's conclusion that Pennsylvania Glass Sand may not rely on any tort theory to bring its claims makes it unnecessary for the Court to determine the scope of the limitation on liability, if any, created by what the parties have referred to as the "Caterpillar Warranty" which purports to

limit Caterpillar's liability to the cost of replacement parts.

Title 13 Pa.C.S.A. § 2725(a) provides that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Section 2725(b) provides that:

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In this case, tender of delivery occurred sometime in 1971 and this action was not commenced until June 12, 1979. Plaintiff does not allege that there was a warranty which explicitly extends to future performance; consequently, Plaintiff's claims for relief are barred by the statute of limitations.

Since Plaintiff's claims are barred by the statute of limitations, the Court need not consider whether the "Caterpillar Warranty" effectively limited Caterpillar's liability for either negligence or strict liability. Even if the Court were to find that the Caterpillar warranty does not in any way limit Caterpillar's liability, the Plaintiff's action would still be barred. The case, therefore, is distinguishable from *Posttape Associates v. Eastman Kodak Co.*, 537 F.2d 751 (3d Cir.1976), in which the Defendant could not raise a defense of the statute of limitations because the action was brought two years after the sale. *See Posttape Associates v. Eastman Kodak Company*, 387 F.Supp. 184 (E.D.Pa.1974). Similarly, the defendant in *Keystone Aeronautics Corp. v. R. J. Enstrom Corp.*, 499 F.2d 146 (3d Cir. 1974), which also involved a determination of the scope of the limitation provided in the warranty, did not raise a defense of the statute of limitations.

The Court recognizes that its ruling with respect to the statute of limitations means that Plaintiff had only approximately two months from the date of the fire in which to institute this action in a timely manner. While this might appear to be a harsh result, it is not so in fact. Plaintiff could have bargained for a warranty which explicitly extended to future performance but did not do so. The warranty provided by Caterpillar extended, therefore, only for four years. Caterpillar thus is entitled to enjoy the repose granted by the statute of limitations.

Having concluded that the Plaintiff may not sustain this action on any tort theory and that its contract claims are barred by the statute of limitations, the Court will grant the Defendant's motion for summary judgment. The Court will also deny all other pending motions as moot.