## State Public School Building Authority v. Goodea Construction Company

*James D. McDonald, Jr., John M. Quinn, Jr.,* for plaintiffs.
*Ritchie T. Marsh,* for defendant Johns-Manville.

ANTHONY, *J.*, March 24, 1981—Plaintiffs have filed a complaint which specifies ten separate causes of action, four in trespass and six in assumpsit, against the five named defendants. The basis of this litigation is the allegation that a defective roof was installed on the James W. Parker Middle School and that the cost of replacing this roof exceeds $250,000. Additionally, it is averred that the building sustained water damage. Currently before the court are the several preliminary objections of defendant Johns-Manville Sales Corporation (J-M), said defendant having been named in four counts in the complaint.

The issues raised by J-M in paragraphs 3, 9 and 10 of its preliminary objections may be considered together since all relate to the timeliness of plaintiffs' institution of this suit. It is argued that the 1971 completion date of the roof bars any action in either trespass or assumpsit, and that laches is also applicable since J-M has been prejudiced as a result of plaintiff's delay. In resolving these issues, the court need look no further than the express language of Pa.R.C.P. 1030, which provides, inter alia, that

both laches and the statute of limitations may be raised only as new matter. The rationale of this requirement is accurately noted in plaintiffs' brief; i.e., the applicability of these defenses cannot be determined until a factually complete record is developed. Such a record is particularly necessary in this suit, since it appears that a genuine issue exists as to when the defect in the roof was discovered. Additionally, it appears that a factual determination must be made as to whether J-M has waived the statute of limitations. Finally, a more complete record will allow the court to determine whether the State Public School Building Authority is an "arm of the Commonwealth" which is entitled to the benefit of the principle that the statute of limitations does not run against the sovereign. See State Public School Building Authority v. G.A.F. Corp., et al., No. 1824-A-1979, Erie County (1980).

Based upon the foregoing, the court concludes that defendants' preliminary objections relating to laches and the statute of limitations must be overruled. These defenses may be raised as new matter.

The bulk of the remaining preliminary objections relate to a warranty bond which was incorporated by reference in the complaint and attached thereto as Exhibit "D." Paragraphs 4 through 7 of the objections assert, in various ways, that the bond is a complete defense to all claims against J-M. It is argued in paragraphs 11 and 12 that an action on the bond itself must be tried separately, and in paragraph 14 that a more specific pleading is needed to "bring the plaintiff within the terms . . . of the bond."

With regard to J-M's assertion that the bond constitutes a complete defense, the following provisions of the bond are relevant:

(A) This guarantee is given and accepted in lieu

of all other liabilities or warranties on the part of any and all Johns-Manville Corporations, expressed or implied, in fact or in law, including, without limitation, the warranty of merchantability and the warranty of suitability for a particular purpose. No Johns-Manville Corporation shall have any liability for incidental or consequential damages of any nature whatsoever.

(B) No representative of J-M or any other person has any authority to assume for J-M any other liability or responsibility in connection with the roof described above. Either direct or indirect acceptance of and/or payment for this guarantee constitutes approval of, an agreement with, all of its terms and conditions by the owner.

The "guarantee" mentioned in paragraph (a) consists of J-M's promise to make all repairs necessary to maintain the roof in a water-tight condition for a 20-year period, so long as the reasonable cost of these repairs does not exceed the $22,900 limit specified in the guarantee. Another named defendant, Employer's Commercial Union Insurance Co., is J-M's surety under the bond.

It is argued that the language of paragraph (a) compels dismissal of all causes of action except for a cause of action based on the bond itself. In particular, J-M asserts that the counts in negligence, strict products liability, and breach of implied and express warranties must be dismissed. The court disagrees, concluding that more facts must be adduced before the court may determine the applicability and/or scope of the exculpatory language of the bond.

With regard to negligence and products liability, (see Restatement, 2d of Torts §402A) contractual exculpation clauses will be upheld only where several requirements are met. In Employers Lia-

bility Assurance Corp. v. Greenville Business Men's Assoc., 423 Pa. 288, 224 A. 2d 620 (1966), the Supreme Court had occasion to decide the validity of an exculpatory clause included in a commercial lease. The court held that three threshold requirements must be found in order for an exculpatory clause to be valid:

Generally speaking, an exculpatory clause is valid if: (a) "it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or State . . ."[cite omitted]; (b) "the contract is between persons relating entirely to their own private affairs" [cite omitted]; (c) "each party is a free bargaining agent: and the clause is not in effect" a mere contract of adhesion, whereby (one party) simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely." [cite omitted]. 423 Pa. at 291-2.

The court went on to hold that even if an exculpatory clause is valid pursuant to the above-quoted test, four additional standards must be applied before the clause will be interpreted to relieve a person of liability for his own negligence. First, such clauses must be construed strictly because they are disfavored in the law. Second, the intent to release the party from liability for negligence must be spelled out with "the greatest of particularity." Additionally, the clause will be construed with every intendment against the party seeking immunity. Finally, the party asserting immunity has the burden of establishing such immunity.

When applied to the instant case, the Employers Assurance guidelines indicate several flaws in J-M's argument that it is immune from tort liability. It cannot be argued that the proper construction of public school buildings is not " . . . a matter of

interest to the public or state. . . ." Thus to deny full recovery to the School Building Authority and the School District for the negligent acts of a defendant would be improper under Employers. Similarly, the court finds that the exculpation agreement does not relate merely to the "private affairs" of the parties. Rather, enforcement of the clause would affect all those who pay School District taxes.

Having failed to meet the first two requisites to validity as stated in Employers, the exculpatory clause cannot be found to immunize J-M from tort liability.[1]

Even if the instant clause were part of a solely private agreement the Employers test would nonetheless compel dismissal of the preliminary objections as to immunity from negligence due to the several factual issues presented, i.e., (1) was the contract one of adhesion?; (2) did the parties intend that prior negligent acts be included in the clause?; (3) did the parties intend that liability for defective products under Restatement, 2d of Torts, §402(A), be precluded?

Potential factual issues aside, however, the court holds that the State has an interest in the subject matter of the contract and that the agreement does not relate simply to the personal interests of private parties. We therefore conclude that the exculpatory clause is invalid as against plaintiff's causes of action in tort.

As noted above, J-M also asserts that the exculpation clause is a bar to plaintiffs' cause of action for breach of warranties. Of relevance to this issue

---

1. Strict products liability, although not discussed in Employer's, would be subject to disclaimer requisites at least as stringent as those found in Employer's, if indeed such liability may be disclaimed at all. At any rate, we find the preliminary objection to the strict liability claim to be without merit for the same reason applied to the negligence claim.

is §2-719(2) of the Uniform Commercial Code, 13 Pa.C.S.A. §2719(2). Section 2-719 provides that parties may agree to a limitation of the buyer's remedies, and that a given remedy or a given measure of damages may be agreed upon to the exclusion of the general remedy provisions of the Code. Subsection (2), however, provides as follows:

(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act.

As noted above, the "exclusive remedy" provided for in the J-M 20-year guarantee is that J-M will make all repairs necessary to maintain the roof in a water-tight condition. Plaintiffs aver, and J-M admits, that certain repairs have been made pursuant to the guarantee. Plaintiffs further aver, however, that these repairs were unsuccessful, and that the roof had to be replaced as a result. A factual issue therefore exists as to whether there has been a failure of the essential purpose of the limited remedy.[2] If such a failure has occurred, then the limiting clause " . . . must give way to the general remedy provisions of this Article." See Comment 1 following 13 Pa.C.S.A. §2719(2). See also White & Summers, Uniform Commercial Code, Second Edition, §12-10.

Therefore, J-M's preliminary objections to plaintiffs' claims of breach of warranties are dismissed. The record must be further developed so that it may

---

2. In a related argument, J-M asserts that plaintiffs "approved and accepted" the terms of the bond by requesting repairs pursuant to the warranty. No authority is provided in support of this estoppel theory, and the court is doubtful as to its validity. At any rate, estoppel must be raised as new matter. See Pa.R.C.P. 1030.

be determined whether there has been a failure of the essential purpose of the limited guarantee.

The final bond-related objection is a motion to dismiss for improper joinder. As stated above, J-M asserts that its liability, if established, is limited to the terms of the guarantee bond. It is argued that an action to enforce the 20-year repair guarantee is a distinct cause of action which should be tried separately. The court rejects this argument for several reasons.

The basic premise of J-M's misjoinder argument is incorrect. As to the trespass counts, the court has already decided that the bond is invalid. Thus, the fact that J-M is potentially liable under plaintiff's tort theories renders J-M a proper party to the lawsuit. Even if liability is limited to the bond, (which is still a possibility), we disagree with J-M's assertion that an action to enforce the bond " . . . would entail separate and distinct offers of proof, damages, responsibilities, and applicable law, and defendant J-M would be prejudiced by plaintiffs' proof as to the other defendants." (Defendants' Brief, p. 6.) This lawsuit involves an allegedly defective roof. Proof as to defective materials and/or workmanship will be as relevant to J-M as it will be to the other defendants since even the limited guarantee cannot form the basis of a cause of action unless it is shown that the roof leaked and that J-M's repairs were ineffective. The court therefore concludes that J-M is properly joined as a party to this action.

Another preliminary objection offered by J-M is a demurrer to the causes of action in trespass. Citing Pa. Glass Sand Corp. v. Caterpillar Tractor Co., 496 F. Supp. 712 (M.D. Pa. 1980), J.M. asserts that the damages sought are not recoverable under any tort theory because there were no *personal* injuries. The court disagrees.

In Pa. Glass Sand the court stated that in lieu of a Pennsylvania Supreme Court decision on point, a "prediction" had to be made as to whether "economic loss' was recoverable in tort in Pennsylvania. The district court went on to hold that damage to an allegedly defective tractor was not compensable in either negligence or under §402A of the Restatement, 2d of Torts. We conclude that the Pa. Glass Sand court was mistaken, and that Pennsylvania tort law does allow for the type of recovery sought by plaintiffs herein.

As to strict liability, the very cases cited in Pa. Glass Sand compel the conclusion that property damage caused by an unreasonably dangerous defective product is compensable under §402A. In Kassab v. Central Soya, 432 Pa. 217, 246 A. 2d 848 (1968), our Supreme Court abolished the vertical privity requirement in an action for breach of an implied warranty. In so holding, the court compared the warranty action with an action under §402A. In a footnote, the court provided its view of the types of damages recoverable under the latter at 231:

[7]The language of the Restatement, speaking as it does of injury to either the individual or his property, appears broad enough to cover practically all of the harm that could befall one due to a defective product. Thus, for example, were one to buy a defective gas range which exploded, ruining the buyer's kitchen, injuring him, and of course necessitating a replacement of the stove itself, all of these three elements of the injury should be compensable. The last, replacing the stove, has been sometimes referred to as "economic loss," i.e., "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, 114 U. Pa. L. Rev. 539, 541 (1966). There would seem to be no reason for excluding this measure of

damages in an action brought under the Restatement, since the defective product itself is as much "property" as any other possession of the plaintiff that is damaged as a result of the manufacturing flaw. Thus, since the tort action would enable plaintiff to recover for economic loss (the physical harm necessitated by 402a would, ipso facto, be present given the defect in the product which caused the damage), so also should this form of damages be compensable in contract. Contract cases from other jurisdictions dispensing with privity have allowed recovery for all three types of injury; personal injury, Henningsen v. Bloomfield Motors, Inc., supra note 3; injury to plaintiff's property other than the defective article itself, Morrow v. Caloric Appliance Co., supra note 3; and "economic loss", State Farm Mut. Auto Ins. Co. v. Anderson-Weber, Inc., supra note 3.

Although merely *dictum,* the above-quoted language indicates clearly that the Supreme Court interprets Section 402A as allowing recovery for injury to the person, the person's property, and the defective item itself.

The scope of recovery suggested by the Kassab court was employed the next year in MacDougall v. Ford Motor Co., 214 Pa. Super. Ct. 384, 257 A. 2d 676 (1969). There the court allowed recovery for damage to the plaintiff's automobile, which was shown to be defective in violation of §402A. We therefore conclude that physical damage to property, even if the property is the defective product itself, is compensable in Pennsylvania in an action under §402A.[3] Thus, assuming that all of the elements of

---

3. In so holding, the court recognizes that the various states are not in agreement as to the scope of recoverable damages. See Frumer and Friedman, Products Liability, Vol. 2 §16A (4)(K).

a cause of action under Section 402A are proved at trial, plaintiffs would be entitled to the replacement cost of the roof as well as the cost of repairs necessitated by water damage to the school building.

With regard to the argument that property damage is not recoverable under a negligence theory, the court finds that the above discussion controls. We perceive no reason why the damages sought herein should not be awarded if it is shown that all costs were incurred as the direct result of the negligence of defendant. It cannot be argued that it is not foreseeable that an improperly constructed roof would allow water damage and have to be replaced. If a manufacturer may be held *strictly* liable for all physical damage caused by a defective product, he surely must be liable where the damage is shown to be a result of his negligence. We therefore conclude that defendants' demurrer to plaintiffs' causes of action in trespass must be dismissed.

The two remaining preliminary objections combine to create an intriguing situation. On the one hand, J-M seeks a more specific pleading as to damages. On the other, J-M moves to strike off that portion of the complaint wherein it is averred that the replacement roof cost over $250,000.[4]

At any rate, the matter is easily resolved. Defendant does have the right to an itemization of damages so that a complete defense may be prepared: General State Authority v. Suter Corp., 24 Pa. Commw. Ct. 391, 356 A. 2d 377 (1976). In requiring plaintiffs to list all damage with specificity, we render as moot the motion to strike off since the itemized list of damages will provide the media with whatever information they desire as to the extent of damages.

---

4. J-M avers that the media will use this figure to the detriment of all defendants.

To summarize, the court holds that the preliminary objections as to timeliness are premature. Preliminary objections as to exculpatory bond agreement are dismissed with prejudice as to the trespass counts, and are dismissed as premature with regard to the assumpsit counts. Defendants' demurrer to the trespass counts is dismissed, as is the motion to strike off the reference to the expense incurred in replacing the roof. The motion for a more specific pleading as to damages is sustained, and plaintiffs are directed to file an amendment to the complaint wherein an itemized list of damages shall be included.

### ORDER

And now, March 24, 1981, it is hereby ordered and decreed that defendants' preliminary objections are dismissed, except that plaintiffs are directed to file a more specific pleading as to damages.