## Dusack v. Conrail Corporation

*Samuel DiFrancesco, Jr.,* for plaintiffs.
*Joseph S. D. Christof, II,* for defendant Conrail Corporation.

*Frederick N. Egler, Jr.,* for defendant Chrysler Corporation.

SHAULIS, *J.,* September 16, 1982—This case is before the court on preliminary objections filed by all parties involved. For the reasons set out herein, defendants' preliminary objections must be overruled with the exception of R&S Motor Co., Inc.'s preliminary objection in the nature of a demurrer as to Count four which must be sustained. Plaintiffs' preliminary objection that the statute of limitations was improperly raised by defendants at this time must be sustained.

## FACTS

Plaintiff Woodrow Simmers purchased a 1978 Chrysler Cordoba automobile in or about January, 1979, from defendant R&S Motor Co., Inc. On February 23, 1979, plaintiff Loretta Dusack was operating the automobile with the permission of Simmers in Ypsilanti, Michigan. Plaintiff Loretta Conahan was a passenger in said automobile. Allegedly, upon crossing a railroad crossing owned, operated and maintained by defendant Conrail Corp., there was a malfunction of the suspension and frame or other components of the automobile, and/or a defect in the railroad crossing. Plaintiffs allege that this caused the vehicle to strike a rail or tie, or a rail or tie to strike the vehicle which resulted in Loretta Dusack and Loretta Conahan being thrown into the windshield, causing bodily injury to both.

Plaintiffs instituted this action by praecipe for writ of summons on February 24, 1981. All defendants named responded by way of preliminary objections. This was followed by plaintiffs' preliminary objection. These specific preliminary objections will be set out below.

## DISCUSSION

All defendants initially raise the defense of the statue of limitations as a preliminary objection by a motion to strike. Pa. Civil Rule 1017(b)(4) provides that the statute of limitations may be raised by way of a demurrer, but only where the statute of limitations is nonwaivable. See also Ziemba v. Hagerty, 436 Pa. 179, 259 A.2d 879 (1969).

Numerous cases have indicated that in a personal injury action, the statute of limitations may be waived by consent of the parties. Bellotti v. Spaeder, 433 Pa. 219, 249 A.2d 343 (1969); Cooper v. Downington School District, 238 Pa. Super. 404, 407 n.2, 357 A.2d 619 (1976). Furthermore, it has been said that a procedural statute of limitations may not be raised by demurrer. Personal injury actions that did not result in death are included in the category of a procedural statute. Spickler v. Lombardo, 32 Somerset Legal Journal 16 (1976). In such cases, the statute of limitations must be raised only by new matter in defendant's answer. Royal Oil & Gas Corp. v. Tunneltown Mining Co., 444 Pa. 105, 282 A.2d 384 (1971); Spickler v. Lombardo, supra. See also Pa.R.C.P. 1030. Therefore, we believe that plaintiff's preliminary objection requesting the dismissal of defendants' respective motions to strike contained in their preliminary objections should be sustained, not only because the statute is waivable, but also due to the fact that defendants brought their preliminary objection as a motion to strike rather than in the nature of a demurrer. See Pa.R.C.P. 1017(b) (4).

Although the statute of limitations should be pleaded as new matter in a personal injury case, the Cambria County Court of Common Pleas has indicated that, "the courts may consider the defense if

raised by preliminary objection in the interest of judicial economy." Swavely v. Dick, 12 D.&C. 3d 497 (1979), citing McDevitt v. Golin, 35 Pa. Commw. 409, 386 A.2d 627 (1978) and City of Philadelphia v. Shapp, 44 Pa. Commw. 303, 403 A.2d 1043 (1979). Such a determination need not be made in this case as the statute of limitations had been tolled. Accordingly, the defense is invalid.

There is a two-year limitation period for an action to recover damages for injuries to the person. 42 Pa.C.S. §5524(2). Under Pennsylvania law, the statute of limitations period begins to run from the time that plaintiff became aware or should have been aware of the cause of his personal injury. Bayless v. Philadelphia Nat. League Club, 597 F.2d 37 (3rd Cir. 1978), on remand 472 F. Supp. 625, affirmed 615 F.2d 1352. See also Schaffer v. Larzelre, 410 Pa. 402, 189 A.2d 267 (1963); Bickell v. Stein, 291 Pa. Super. 145, 435 A.2d 610 (1981); Armacost v. Winters, 258 Pa. Super. 424, 392 A.2d 866 (1978). It is apparent then, that the limitations period commenced on February 23, 1979, the date of the accident, as this was the date that plaintiffs should have been aware of their injuries.

Pa.R.C.P. 1007 indicates that an action may be commenced by filing with the prothonotary a praecipe for writ of summons. Such was the case here so that the statute would be tolled if the filing was timely.

A problem arises though, as the filing did not occur until February 24, 1981, or two years and one day after the accident. This will not defeat plaintiffs' cause of action, as the Somerset Courthouse was closed on February 23, 1981, in observance of Washington's Birthday. See 4 Misc. 1981 in the prothonotary's office of Somerset County.

1 Pa.C.S. §1908 states the following:

"§1908. Computation of time

"When any period of time is referred to in any statute, such period in all cases, except as otherwise provided in section 1909 of this title (relating to publication for successive weeks) and section 1910 of this title (relating to computation of months) shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation." 1972, Dec. 6, P.L. 1339, no. 290, §3, imd. effective. This statutory language pertains to "any law" and "all cases." Williams Appeal, 434 Pa. 274, 256 A.2d 623 (1969).

In accordance with §1908, the first day of the two year period was February 24, 1979, and the last day of the period would normally have been February 23, 1981. See also: Commonwealth v. Kuhn, 200 Pa. Super. 649, 190 A.2d 337 (1963). Since February 23, 1981 was a legal holiday, it was omitted and replaced by February 24, 1981 as the last day of the two-year period. Spillane v. Work. Comp. Appeal Bd. et al., 26 Pa. Commw. 536 (1976); Hawrylak v. Slickerman, 28 Somerset L.J. 196 (1972). Consequently the statute of limitations was tolled on the last day of the period.

In addition to the two-year limitations period, "a personal injury claim based upon a breach of warranty is distinct from a personal injury claim based on negligence and can be commenced within four years after the cause of action has occurred." Salvador v. Atlantic Steel Boiler Co., 224 Pa. Super. 337, 307 A.2d 398 (1973). See also 13 Pa. C.S. §2725. Therefore, if the two-year limitations period has expired, plaintiffs' cause of action based upon breach of warranty would still survive.

Defendants' next argument is that even if the statute was properly tolled, it should be rendered ineffective due to the fact that they had not been served with the writ until 87 days after the filing. This alleged lack of diligence, they argue, should void the effective filing. We feel defendants' beliefs are misplaced.

Defendants place great reliance on Lamp v. Heyman, 469 Pa. 465, 366 A.2d 882 (1979). There, plaintiff's attorney filed a praecipe for a writ of summons within the time period permitted by the statute of limitations. The attorney instructed the prothonotary to issue the writ but not to deliver it to the sheriff for service. He subsequently had the writ reissued and served after the limitations period had expired.

Although a writ must be served within 30 days after issuance or filing, Pa.R.C.P. 1010(a) permits a writ to be reissued at any time after the original issuance equivalent to that permitted by the applicable statute of limitations. Moreover, the writ may again be reissued after the first valid reissuance if done so in a timely manner. In other words, "each valid reissuance gives rise to a new equivalent period during which the writ may again be reissued." Lamp v. Heyman, supra, citing Ehrhardt v. Costello, 437 Pa. 556, 264 A.2d 620 (1970) and Salay v. Braun, 427 Pa. 480, 235 A.2d 368 (1967) and Zarlinsky v. Laudenslayer, 402 Pa. 290, 167 A.2d 317 (1961). See also Sprague v. Pumphrey, 29 Somerset L.J. 202 (1974).

Lamp v. Heyman, supra, goes on to hold that "A Writ of Summons shall remain effective to commence an action only if the plaintiff then refrains from a course of conduct which serves to stall in its tracks the legal machinery he has just set in motion." (This only applies to actions commenced after

the date of this decision, November 24, 1976.) "Plaintiff should comply with local practice as to delivery of the writ of summons to the sheriff for service; if under local practice, it is the prothonotary who both prepares the writ and delivers it to the sheriff, the plaintiff shall have done all that is required of him when he files the praecipe for writ." See also Kuzupas v. Kammerer and Ford Motor Co., 35 Somerset L. J. 168 (1978). Furthermore, "a civil action is commenced by filing a praecipe for a writ or by filing a complaint, irrespective of whether the prothonotary issues the writ, or the sheriff makes service." Sprague v. Pumphrey, supra.

It is the local practice in Somerset County for the prothonotary to deliver the writ or complaint to the sheriff for service. Kuzupas v. Kammerer and Ford Motor Co., supra. Here, plaintiffs' attorney's affidavit indicated that this was done. Plaintiffs' counsel subsequently had the writ reissued twice before service was effectuated. As we have shown, this is permissible.

The only limitation that Lamp v. Heyman, supra, places on this procedure is that once the writ has been filed, plaintiff must not attempt to delay the proceedings. The affidavit submitted by plaintiffs' attorney indicates that the writ was filed on February 24, 1981. The sheriff's office was given oral instructions concerning service on March 10, 1981, but that service was not effected. Upon learning of this on March 23, 1981, plaintiffs' attorney had the writ reissued and delivered to the sheriff's office for service. On April 8, 1981, plaintiffs' attorney was notified that service had still not been effected and that written instructions were requested as the notes from the verbal communications were no longer available or could not be found. These instructions were prepared on April 9, 1981. Due to

plaintiffs' attorney's schedule, the instructions were not forwarded to the sheriff's office until April 23, 1981, at which time the writ was once again re-issued. This reissued writ was served on defendants. We believe that these facts, if true, do not indicate that plaintiffs had done anything to create a bar to service or to hinder the proceedings. Thus, the writ remained effective and the statute of limitations had been properly tolled.

The fact that the writ remained effective does not preclude relief to defendants. If defendants can show and the trial court finds that plaintiffs' delay had been unreasonable, and that defendants had been prejudiced by such a delay, the doctrine of non-pros may be applicable to bar plaintiffs' claim. Lamp v. Heyman, supra, citing James Brothers Co. v. Union Banking and Trust Co. of DuBois, 432 Pa. 129, 247 A.2d 587 (1968) and Gallagher v. Jewish Hospital Assn. of Philadelphia, 425 Pa. 112, 228 A.2d 732 (1967).

Defendants' next contention raised by way of a preliminary objection in the nature of a demurrer is that, generally, plaintiffs' complaint lacks specificity as to each of the named defendants. "Preliminary objections in the nature of a demurrer will be sustained only when it appears with certainty that the law permits no recovery under the facts pleaded, and any doubts in determination should be resolved by overruling the objections." Upper Moreland Twp. v. Com., Pennsylvania Dept. of Transp., 48 Pa. Commw. 27, 409 A.2d 118 (1979). See also Buckley & Co., Inc. v. Com. Dept. of Transp., 34 Pa. Commw. 182, 382 A.2d 1298 (1978); Pile v. Nation-wide, 36 Somerset L. J. 34 (1978); Deem v. Pritts, 36 Somerset L. J. 113 (1978); Klink v. Whalley Ford Sales, 35 Somerset L. J. 15 (1977); Jim Bulow Motors v. Meeman, 33 Somerset L. J. 165 (1976). If the

complaint adequately sets forth a cause of action, the demurrer should not be sustained. Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979). As the factual averments contained in the complaint can support a recovery, the case is not clear and free from doubt in favor of defendants, and the demurrer should be overruled.[1]

In addition, defendant R&S Motor Company, Inc. alleges that it was only the seller of the automobile and that plaintiffs failed to plead any tortious conduct committed by it. "Where the product is defectively manufactured, the manufacturers and all successive sellers of it are liable under Restatement (Second) Torts, §402 A." Bialek v. Pittsburgh Brewing Co., 430 Pa. 176, 242 A.2d 231 (1968). Similarly, Berkebile v. Brantley Helicopter Corporation, 462 Pa. 82, 337 A.2d 893 (1975), stated that, ". . . the seller of a product is responsible for injury caused by his defective product even if he exercises all possible care in its design, manufacture and distribution. . . ." Consequently, in a §402A strict liability action, no tortious conduct on the part of a seller is needed other than that the seller did in fact sell the product. That alone will confer liability upon a seller if the elements of §402A are proven.

In the alternative, defendants request a more specific complaint under Pa.R.C.P. 1017(b)(3). The question to be decided under Rule 1017(b)(3) is whether the complaint is sufficiently clear to enable defendant to prepare his defense, or whether plaintiff's complaint informs defendant with accuracy and completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense. 2

---

1. R&S's preliminary objection in the nature of a demurrer is sustained as to another matter, infra.

Goodrich-Amram 2d §1017(b):9, at 66. See also Central Petroleum Co. v. Schmidt, 34 Somerset L. J. 202, 208 (1977); Pittman v. Trent, 30 Somerset L. J. 283, 284-286 (1975). The function of the pleadings is to state the facts in a manner which will communicate them and the issues clearly to the opponent and to the court. J. Reisman and Sons, Inc. v. Snyder's Potato Chips, A Division of Curtice-Burns, 31 Somerset L. J. 77 (1975). Lack of specificity in a complaint is a ground for a preliminary objection requiring a more specific complaint. Linn v. Morgan, 70 D.&C. 2d 717 (1974).

Plaintiffs' complaint alleges that defendant Conrail Corporation had negligently maintained the railroad tracks at the crossing where the accident occurred, and this caused a tie or rail to become loose causing the tie or rail to strike the underside of the automobile thereby disabling the vehicle and provoked the injuries.

In negligence actions as in other civil actions, facts, and not legal conclusions must be stated, 61 A Am. Jur 2d §99, from which the legal conclusion of negligence can be inferred. Choder v. Seven Springs, 39 Somerset L. J. 62 (1979) citing Slother v. Jaffee, 356 Pa. 238, 51 A.2d 747 (1947), and Pennsylvania Railroad v. Pittsburgh, 335 Pa. 449, 7 A.2d 302 (1939), and PLE, Pleading §14, and Goodrich-Amram 2d §1019(a):12 and §1044(a): 1.2.

"In a negligence action, sufficient facts must be averred to show that a duty required by law has been breached or neglected by defendant and plainly to indicate the causal connection between this breach or neglect and the injury complained of constituting the proximate cause thereof. The complaint should set forth the nature of the defects, or their relation to the injury, and should set forth facts constituting a continuous succession of events,

linked together and forming a natural whole, showing the final result to be the reasonable and probable consequence of the primary cause. It is not sufficient to say simply that the injury flowed from an alleged act of negligence unless the nature of the negligence is such as necessarily to invoke the injury." 3 Standard Pa. Prac. §191 (Rev.ed.).

In a trespass complaint, the pleader should aver the general factual situations, asserting what occurred, and then detail what defendant did or omitted doing, which would constitute the negligence which caused plaintiff injuries. This is so because the complaint should show the basis for the conclusion of negligence and the cause of the plaintiff's harm. 2A Anderson Pa. Civ. Prac. §1019.23. See also 3 Standard Pa. Prac. §193 (Rev.ed.); Pike Cty. Hotels Corp. v. Kiefer, 262 Pa. Super. 126, 396 A.2d 677(1978). Plaintiffs must aver material facts upon which to predicate a duty running between them and defendant. Pike Cty. Hotels Corp. v. Kiefer, supra.

Application of the above cited principles to the facts at bar lead us to the conclusion that plaintiffs adequately pleaded their case in Count One as to Conrail. The material facts of plaintiff's negligence allegation have been pleaded with specificity. This will allow Conrail to prepare an adequate defense as to the issues raised in the pleadings.

As to defendants Chrysler Corp. and R&S Motor Co., Inc., plaintiffs' complaint alleges that the automobile was in a defective condition and that both defendants had breached express and implied warranties that the vehicle was fit for the ordinary purpose for which such vehicles are used. Proof of a specific defect is not essential in establishing §402A liability. MacDougall v. Ford Motor Co., 214 Pa. Super. 384, 257 A.2d 676 (1969), citing Bialek v. Pitts-

burgh Brewing Co., 430 Pa. 176, 242 A.2d 231 (1968). That case involved an automobile accident that allegedly occurred from the failure of the steering mechanism. The court held that, "the mechanism malfunction was evidence of a defective condition, without proof of the specific defect in design or assembly which caused the malfunction."

Counsel for one of defendants has submitted to us the case, Sellers v. Sharon Chrysler-Plymouth, Inc., 49 D.&C. 2d 483 (1970), for the apparent purpose of showing that MacDougall v. Ford Motor Co., supra, does not apply when a question of pleading is involved, but only when a case is dealing with the question of proof. This decision was later found to be incorrect in Sellers v. Sharon Chrysler-Plymouth, Inc. (No. 2), 50 D.&C. 2d 179 (1970), where the court adopted the language of MacDougall v. Ford Motor Co. and stated that a plaintiff need only allege the malfunction which he relies upon as opposed to alleging the specific defect. Moreover, alleging a specific defect is not essential for a breach of warranty claim unless the claim is based on an express warranty in which case the specific terms of the warranty must be averred. Carr v. Seven Springs Farm, et al., 37 Somerset L. J. 318 (1979).

Plaintiffs' complaint alleges that the accident occurred due to a malfunction of the suspension and frame or other components of the automobile. This, without more, is adequate as plaintiffs need not plead the specific defect. In addition, a complaint averring strict liability must also state that defendant is in the business of selling such a product and that there was no substantial change in the product's condition after leaving the seller's hands. Aetna Ins. Co. v. Ginter, 72 D.&C. 2d 614 (1974). Counts Two and Four fully meet these requirements and no additional pleading is necessary.

Plaintiffs need not plead the specific defect in Counts Three and Five as those counts deal with breach of warranties. However, the specific terms of the alleged express warranty have been asserted with specificity. Accordingly, Counts Three and Five are adequate as pleaded.

Finally, defendant R&S Motor Co., Inc., hereinafter referred to as R&S, has alleged that it is immune from tort liability as it does not fall within the exceptions to §301 of the No-fault Act, 40 Pa.C.S. §1009.301.

[§301 omitted]

Singer v. Sheppard, 464 Pa. 387, 346 A.2d 897 (1975), explained that the provisions of the No-fault Act abolishing the right of recovery for a limited group of accident victims is not unconstitutional. The court said that this was justified for "the general good and, in cases of relatively minor accidents, to substitute prompt and sure recovery of economic loss for delayed and uncertain awards of courts." It is only when a defendant falls within one of the listed exceptions to §301(a), that a plaintiff may recover from the defendant in a tort action. O'Sullivan v. Ruszecki, 2 D.&C. 3d 276 (1977).

The question now boils down to which category of exceptions to tort abolition in §301 does R&S fit into, if any. The only possible exception is §301(a)(2) which is the section that plaintiffs allege is applicable to R&S. On the other hand, R&S claims that it is not one of the parties included in that section. Defendant's interpretation is correct although plaintiffs' claim may still be premised on §301.

Singer v. Sheppard, supra, beginning at p. 404, describes the parties that are not immune from tort liability under §301(a)(2):

"This subsection permits the retention of tort action in one instance of products liability. The subsection envisages three situations. First, where the vehicle is defective because of the act or omission of a repairman or a manufacturer, the victim may sue in tort for losses beyond the basic no-fault coverage. Second, where a defective motor vehicle is involved in an accident but the accident does not arise from its use or maintenance as where a car explodes or falls on the victim, the victim must recover solely in tort. Finally, where a defective motor vehicle is operated by a manufacturer or repairman and in connection with his business, the victim-operator must rely on no-fault coverage.

"In the first situation, tort recovery is permitted to encourage the safe and proper design and repair of motor vehicles. Deterrence again serves as the rationale for upholding the distinction created. See R. Keeton and J. O'Connell, Basic Protection for the Traffic Victim, 247-49 (1965).

"Tort recovery is permitted in the second situation since the legislature sought through the No-fault Act to aid the victims of motor vehicle accidents. That purpose would not be effectuated by the compensation of an individual injured by an instrumentality which happens to be a motor vehicle but outside the context of a motor vehicle accident. Such an occurrence would be due to the characteristics of the vehicle as a moveable or heavy or potentially explosive object, not due to its function as a mode of transportation.

"In the final situation, the manufacturer or repairman operating a defective vehicle is treated as any other operator and is limited to his or her no-fault recovery. Unlike the first situation described under sub-section 301(a)(2), no deterrent effect is present when the manufacturer or repairman is

driving. It could reasonably be assumed that his or her own personal safety would encourage proper design and repair of the vehicle being used and, given that assumption, the legislature could reasonably limit recovery to economic losses." In addition, Smith v. Harrisburg Taxicab & Baggage Co., 75 D.&C. 2d 786 (1976), discussed whom the legislature had excluded from the application of the No-fault Act. Automotive manufacturers, such as defendant Chrysler Corp., were listed as excluded under §301(a)(2) and still liable for a tort claim, but not sellers or dealers.

The only source that has been located that interprets §301(a)(2) as preserving tort liability against car dealers is 38 Pitt. Law Review 57 (1976). It must be pointed out that this article contained only a general view of §301(a)(2) without citing any authority for its interpretation. Therefore, this is not authority to refute Singer v. Sheppard, supra, and Smith v. Harrisburg Taxicab & Baggage Co., supra.

Our review of the applicable cases pertaining to what parties are included in §301(a)(2) leads us to the conclusion that R&S is not included in the exceptions listed in that section, and as plaintiffs based Count Four of their complaint on that specific section, R&S's preliminary objection in the nature of a demurrer must be sustained due to the fact that the law permits no recovery by plaintiffs under the subsection.[2]

We must note, however, that tort liability is not abolished as to R&S. The language of §301 states that, "tort liability is abolished with respect to any injury that takes place in this State. . ." "Although the No-fault Act partially abolished tort liability for motor vehicle injuries, such abolition applied only to

---

2. See previous discussion concerning demurrer, supra.

injuries that took place in the Commonwealth. Thus, a passenger who was injured in a motor vehicle accident occurring outside of the Commonwealth and who was precluded from recovering any benefits under the No-fault Act, had a tort action for his injuries." Lyngarkos v. Com., Dept. of Transp., 57 Pa. Commw. 121, 426 A.2d 1195 (1981).

Accordingly, R&S remains liable in tort by implication under §301 (although not under §301 (a)(2) as an exception to the abolition of tort liability) to plaintiffs with respect to the accident that took place in Michigan if plaintiffs can prove the prima facie elements of their cause of action.

## ORDER

Now, this September 16, 1982, the preliminary objections of all defendants are overruled with the exception of the preliminary objection of R&S Motor Company, Inc., in the nature of a demurrer as to Count Four of the complaint which is sustained and Count Four dismissed. Plaintiffs' preliminary objections are sustained.

Defendants are allowed 20 days to file responsive pleadings.