473 A.2d 120

William E. THOMPSON and Ruth Thompson, His Wife,

v.

ANTHONY CRANE RENTAL, INC., and West
Penn Power Company.

Appeal of ANTHONY CRANE RENTAL, INC.

Superior Court of Pennsylvania.

Argued March 31, 1983.

Filed Feb. 10, 1984.

Reargument Denied April 18, 1984.

Petition for Allowance of Appeal Denied July 27, 1984.

388

Seymour A. Sikov, Pittsburgh, for appellant.

Leonard E. Price, Pittsburgh, for Thompson, appellees.

Thomas F. Weis, Pittsburgh, for West Penn, appellee.

Before CAVANAUGH, BROSKY and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The instant action was instituted in trespass in the lower court by Plaintiff-Appellees, William E. Thompson and Ruth Thompson, his wife, to recover damages for injuries sustained by Mr. Thompson when the boom of a truck crane owned by Defendant-Appellant, Anthony Crane Rental, Inc., struck high voltage electrical wires on the premises of Defendant-Appellee, West Penn Power Company. The case proceeded to a trial before a jury and on March 20, 1981, the jury returned a verdict in favor of the Appellees. The verdict was later molded by the lower court to read as follows:

"AND NOW, to-wit, this 30th day of March, 1981, A verdict in favor of West Penn Power Company and a verdict against Anthony Crane Rental, Inc. in the amount of $500,000.00 in the claim of William E. Thompson under § 402A of the Restatement of Torts and in the amount of $490,000.00 in favor of William E. Thompson in the negligence case against Anthony Crane Rental, Inc. Also a verdict for Ruth Thompson in the amount of $150,000.00 in the consortium claim under § 402A of the Restatement of Torts and in the amount of $147,000.00 in the consortium claim in the negligence case. These verdicts shall be construed not to be cumulative and the liability of Anthony Crane Rental, Inc. shall not exceed $500,000.00, in any event, in the claim of William E. Thompson nor $150,-000.00, in any event, in the claim of Ruth Thompson. The verdicts shall be with detention damages in accordance with R.C.P. 238. This remolding supercedes molding by the court of March 20, 1981. The parties shall have 10

days from March 30, 1981 to file appropriate motions in connection with this remolding."

Appellant Anthony Crane Rental raises numerous allegations of error on this appeal regarding the lower court's denial of its motions for judgment n.o.v. and for a new trial.

The facts of record show that in July, 1977, the J.L. Smith Plumbing Company, the employer of Appellee William Thompson, was involved in the relocation of water and drainage pipelines on the premises of Appellee West Penn Power Company at the Mitchell Power Station in Washington County, Pennsylvania. A truck crane together with the services of crane operator, Jerry Torek, was hired at a single hourly rate by J.L. Smith Plumbing Company from Appellant Anthony Crane Rental in order to relocate the heavy lengths of pipe that were to be used on this job.

Appellee William Thompson was Smith's foreman on this job. He testified that on July 18, 1977, the first day the truck crane was on the job, it was being used to move an 800 pound length of pipe when the boom of the crane began to swing back and forth so violently that the front wheels of the crane were lifted off the ground. Mr. Thompson immediately told Mr. Torek to either take the crane off the job or get it repaired. Mr. Thompson further testified that approximately 1½ hours later Mr. Torek returned to Thompson and the crew and told them that this was the last crane available but that he had corrected the problem and the crane would function properly. The next day, the crane was operated without incident although the boom continued to drift a slight distance when first beginning a lift. Mr. Torek was aware of this and assured Mr. Thompson that he could control the lateral movement.

On the morning of July 20, 1977, Mr. Thompson determined that an excavated ditch was too wide to accommodate the wooden planks which he had been using to bridge the ditch for the purpose of laying pipe. The Plaintiff-Appellee then secured permission from West Penn Power to use an old piece of railroad track to bridge the ditch where the pipe was to be laid. At that time, Mr. Thompson was advised by

a representative of West Penn that because the work was proceeding near the power lines, it should be assured that the boom of the crane did not come within eight feet of those lines. Mr. Torek then positioned the crane and lowered out-riggers which supported the crane in a stationary manner while it was being used to set the rail into place over the ditch. Mr. Thompson put both of his hands on the rail to steady it and to guide it into position. The record does not clearly indicate who, if anyone, was giving signals to the crane operator, Mr. Torek, during this period of time. After the rail had been lifted and was being moved sideways in order to position it over the ditch, Raymond Lovelidge, an employee of J.L. Smith Plumbing Company, testified that he noticed the boom of the crane was dangerously close to the power lines. Mr. Lovelidge attempted to signal Mr. Torek to stop the movement of the boom. However, the crane did not stop its lateral movement and the boom came into contact with the power lines. Mr. Thompson, with his hands on the rail, suffered severe electrical burns when the electric current passed through his body. This suit seeking damages was eventually filed.

■ Appellant first contends on this appeal that the lower court erred in refusing to grant its motion for a judgment n.o.v. on the ground that the Appellee, William Thompson, and the crane operator, Mr. Torek, were allegedly co-employees as a matter of law. Our courts have clearly recognized that where an employee is injured by the negligence of another servant of the *same* employer, the Workmen's Compensation Act [1] provides the sole remedy available to the injured party. *Vogel v. Jones & Laughlin Steel Corporation*, 221 Pa.Super. 157, 289 A.2d 158 (1972). However, it is obvious in the instant case that there was a question as to whether the crane operator was in fact a co-employee of Mr. Thompson, due to the fact that Mr. Torek's services were leased by Mr. Thompson's employer from the Appellant, together with the crane. Since there is no question that Mr.

1. Act of June 2, 1915, P.L. 736, art. I, § 101, et seq., 77 P.S. § 1, et seq., as amended.

Thompson could not have been considered an employee of the Appellant, the only issue is whether Mr. Torek could be considered as an employee of J.L. Smith Plumbing Company. The test for determining whether a "borrowing" employer is an employer for workmen's compensation purposes is whether the employer controlled or had the right to control the borrowed employee, not only as to the work to be done but also with regard to the manner of performing it. See *English v. Lehigh County Authority*, 286 Pa.Super. 312, 428 A.2d 1343 (1981) and cases cited therein. That case also holds that in deciding whether a party is an employer for the purposes of the application of the Workmen's Compensation Act, any factual discrepancies are for the trier of fact to resolve, and the question of whether the facts as they are determined to exist constitute an employment relationship is strictly a matter of law.

■ The record in the instant case shows that the testimony concerning who controlled Mr. Torek's manner of performing his work was conflicting. For example, although Mr. Torek asserted that he was told where to position his crane in relation to the ditch, Mr. Thompson testified that Mr. Torek made the decision. Thus, while Mr. Torek generally testified that the Appellee had complete control over the manner of work to be done, the Appellee provided testimony tending to show that Mr. Torek selected the specific manner of performing his tasks. The jury, by answer to special interrogatories, found that Mr. Torek was not a fellow employee of Mr. Thompson. The jury had sufficient evidence upon which it could have based this finding and it is therefore clear that the lower court did not err in denying Appellant's motion for judgment n.o.v. on the claim that the Plaintiff-Appellee was only legally entitled to receive workmen's compensation because of his co-employee relationship with Mr. Torek. We therefore reject his first claim of error.

The Appellant next contends that the lower court erred in submitting to the jury the Plaintiffs' claim based upon strict liability grounds, under Section 402A of the Restatement of

Torts 2d, which claim was based upon the theory that there was a malfunction in the crane.[2] It is argued that the Plaintiffs allegedly failed to clearly establish an absence of secondary causes for the accident, and that such circumstances precluded any finding of liability under § 402A, based upon the Plaintiff's malfunction theory.

 It is well-established that a plaintiff can recover under § 402A if he proves that a product was defective when delivered to the buyer and that the defect caused the Plaintiff's injuries. *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975). § 402A standards can be applied to a lessor of a product as well as a seller. *Francioni v. Gibsonia Truck Corp.*, 472 Pa. 362, 372 A.2d 736 (1977); *Mandel v. Gulf Leasing Corp.*, 250 Pa.Super. 128, 378 A.2d 487 (1977). Moreover, in such cases, a plaintiff need not actually prove a specific "defect" to prevail; the proof of the occurrence of a malfunction of machinery, in the absence of abnormal use and reasonable secondary causes, is evidence of a defective condition for purposes of § 402A application. *MacDougall v. Ford Motor Co.*, 214 Pa.Super. 384, 257 A.2d 676 (1969). The Plaintiff in this case proceeded in a malfunction theory and the lower court charged the jurors on it. No proof of an actual defect was presented. The Appellant argues that a plaintiff must completely negate *all possibility* of a secondary cause in such a case. The Appellant cites the decision in *Lenkiewicz v. Lange*, 242 Pa.Super. 87, 363 A.2d 1172

---

**2.** Section 402A, which was adopted into our law by the Supreme Court in the case of *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), provides:
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer or to his property, if
(a) The seller is engaged in the business of selling such a product, and
(b) It is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
(2) The rule stated in Subsection (1) applies although
(a) The seller has exercised all possible care in the preparation and sale of his product, and
(b) The user or consumer has not bought the product from or entered into any contractual relation with the seller."

(1976) for authority, but apparently has ignored the following excerpt from the Majority Opinion by Judge Price in that case:

"We do not hold that a plaintiff must refute all possible explanations offered by a defendant.... 'It is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities ... but he must eliminate those other causes, if any, as were fairly suggested by the evidence.... And it is the duty of the trial court to determine whether or not this requirement has been met in the first instance before the issue can be submitted to the jury....' " [Citing *Cuthbert v. Philadelphia*, 417 Pa. 610, 614–15, 209 A.2d 261, 263–64 (1965).] 242 Pa.Super. at 92, 363 A.2d at 1175.

■■■ . While we find that the Appellant's position is not valid as to the suggestion that proof of the *complete* absence of any other causes is required of a plaintiff in a case such as this, we do perceive merit in his suggestion that the court erred in submitting the instant case to a jury on a malfunction theory of strict liability. Our conclusion results from the recognition that the court also found sufficient evidence to present this case to the jury on the Plaintiff's theory of negligence by the operator. In fact, negligence was specifically found by the jury to have existed, as evidenced by its response to the court's special interrogatory on the point. It is therefore clear that although the evidence suggested a "defective condition" in the mere occurrence of a malfunction, there was not the requisite absence of evidence of a reasonable secondary cause for the accident to justify submitting the issue of strict liability to the jury on a malfunction theory, where the plaintiff's *only* proof of a "defective condition" was the happening of the accident. We fully recognize that in most circumstances, both a strict liability claim and a regular negligence claim can be alleged, proven, and submitted to a jury in a case. See *Sherk v. Daisy-Heddon*, 285 Pa.Super. 320, 427 A.2d 657 (1981). However, in cases like the instant

one, where the plaintiff's strict liability case depends not upon the actual proof of a defect, but only upon the mere occurrence of a malfunction, it is inconsistent to permit him to proceed on the strict liability ground where he also advances a theory of human intervention which purportedly caused the harm. The Plaintiff's own evidence in this case created the existence of a "reasonable secondary cause" for the accident. See *Wojciechowski v. Long-Airdox Division of Marmon Group, Inc.*, 488 F.2d 1111 (3rd Cir.1973), which discusses this type of situation.

■ Thus, we find that the lower court, in the particular circumstances of the instance case, erred in submitting the Plaintiffs' strict liability theory to the jurors. However, such error does not mandate a reversal, because the lower court properly submitted the issues of strict liability and regular negligence to the jury in separate special interrogatories. The recommended use of such a procedure was the subject of my Concurring Opinion in *Sherk v. Daisy Heddon,* supra. The jury's finding of negligence by the Appellant's operator, which verdict is supported by sufficient evidence in the record, makes unwarranted the granting of judgment n.o.v. to the Appellant, despite the error in the lower court's submission of the strict liability issues to the jury. The negligence finding against the Appellant and the damages awarded on that count remain separate and are not disturbed by our rejection of the strict liability verdict.[3] We therefore dismiss the Appellant's contentions for reversal on such grounds.[4]

3. We find no merit in the Appellant's contention that the evidence was insufficient as a matter of law to support the Plaintiffs' claim of negligence by the crane operator. There was abundant testimony to show that Mr. Torek did not act with due care in causing the crane boom to make contact with the wires, which hung approximately 17 feet from the centerline of the ditch, and to also show that he moved the crane too quickly and without the desired amount of control of its movements. The jury obviously credited such testimony in determining that the operator was negligent.

4. In view of this disposition, we find it unnecessary to consider the Appellant's argument that the lower court should have granted judgment n.o.v. as to the strict liability claim because the evidence alleged-

■ The Appellant also maintains that it was error for the lower court to charge the jury on both strict liability and negligence as grounds for recovery by Plaintiffs when the theories were mutually exclusive. Appellant argues that a new trial was mandated as a result of such instructions. We must disagree. While we have explained that the strict liability issue, based upon the "malfunction" theory, should not have been presented to the jurors under the particular facts of this case, it is clear that appropriate steps were followed by the lower court to avoid any confusion on the part of the jurors in distinguishing between the strict liability and negligence issues. The court's instructions clearly and separately explained the two theories. The avoidance of confusion was further enhanced by the court's submission of special interrogatories, which caused the jurors to separate their consideration of the two issues. Thus, one interrogatory questioned whether the crane was leased in a defective condition, while a separate interrogatory sought a finding as to whether Mr. Torek had operated the crane in a negligent manner. In light of these circumstances, we cannot conclude that the court's instructions on both theories of recovery created grounds for a new trial.

■ We next turn to the Appellant's contention that a new trial was required because the evidence purportedly established beyond doubt that Appellee West Penn Power Company breached the high duty of care it owed Mr. Thompson. In support of this argument, the Appellant points out the high standard of care required in our Commonwealth of a supplier of electric current [citing *Densler v. Metropolitan Edison Company*, 235 Pa.Super. 585, 345 A.2d 758 (1975)], and asserts that the utility should have taken certain steps to either denergize or insulate the wires near the ditch. It is maintained that the failure of West

ly established that Mr. Thompson voluntarily assumed the risk of injury. See *Ferraro v. Ford Motor Company*, 423 Pa. 324, 223 A.2d 746 (1966), where the Court recognized assumption of the risk as a defense in a § 402A case.

Penn to undertake such efforts required the court to de-
clare it negligent in this case as a matter of law. In
examining this issue, we note that the Appellant raises no
claim of error in the lower court's admission or exclusion of
evidence concerning the electricity supplier, nor does Appel-
lant raise the claim that the court erred in charging the jury
as to grounds for holding the utility responsible for the
harm which befell Mr. Thompson. We also cannot ignore
the evidence presented by West Penn which negated a
finding of negligence on its part. The utility, for instance,
presented testimony that the type of temporary insulating
suggested by the Appellant would have been insufficient to
prevent direct contact between the crane and. the charged
electric wire in view of the degree of force with which the
crane struck the wire. Also, there was testimony to the
effect that the boom, which was able to "telescope" in
length, was not expected either to be lengthened to a
degree or operated in a manner which would make it
possible for it to touch the wire. That testimony, as well as
other evidence, would have made it improper for the trial
judge to remove the question of the power company's
negligence from the jury. Further, the same evidence
justified the jury's finding that West Penn Power Company
was not negligent, even under the high standard of care
which was applicable in this case. We therefore reject the
Appellant's contention that a new trial was necessary on
that point.

■■■ The next argument offered by the Appellant is that
it should have been granted a new trial because of emotion-
al outbursts by Mrs. Thompson. There is no question that
the wife-Plaintiff became distraught and was crying and
sobbing during the opening statement by Plaintiffs' coun-
sel. At the court's direction, she left the courtroom, but her
conduct was repeated in the hallway outside of the court-
room, apparently to the extent that the jurors became
aware of it. No citation of authority is necessary to sup-

port the statement that a lower court judge in our Commonwealth is vested with very broad authority in the conduct of a trial, and that his grant or denial of a mistrial or new trial on grounds of improper or inflammatory conduct or comments will not be disturbed in the absence of a manifest abuse of discretion. The trial judge in the instant case found no prejudice to the Appellant arising from Mrs. Thompson's behavior. The record showed that the conduct in issue all took place only on the first day of a trial which lasted for several days, featured the testimony of approximately sixteen witnesses, and produced a transcript of over 900 pages. The judge admonished the jurors not to be influenced by sympathy or prejudice. In discussing the jury instructions, the Appellants' counsel agreed with the trial judge's suggestion that no comment should be made to the jury in the charge regarding Mrs. Thompson's conduct. In light of all of these facts and our own examination of the record, we do not find an abuse of discretion by the trial judge in his denial of a new trial based upon the allegedly inflammatory conduct of Mrs. Thompson. Compare *Auerbach v. Philadelphia Transportation Co.,* 421 Pa. 594, 221 A.2d 163 (1966).

Finally, we consider the claim by the Appellant that the jury verdict of $500,000 for Mr. Thompson and $150,000 to Mrs. Thompson for loss of consortium was excessive to an extent warranting a new trial. In evaluating such an argument, it is clear that each case is to be decided according to its unique facts and circumstances. *Fretts v. Pavetti,* 282 Pa.Super. 166, 422 A.2d 881 (1980). Moreover, the granting or denial of a new trial on this ground is within the discretion of the trial court and will not be reversed in the absence of a clear abuse of discretion. *Albert v. Alter,* 252 Pa.Super. 203, 381 A.2d 459 (1977). Our Court will not find a verdict excessive unless it is so grossly excessive as to shock our sense of justice. *Kravinsky v. Glover,* 263 Pa.Super. 8, 396 A.2d 1349 (1979).

 Being mindful of these guidelines, we can find no grounds for the grant of a new trial based upon the verdicts rendered in the instant case. As the lower court noted in its opinion, there is no doubt that Mr. Thompson was severely injured, and that his injury affected his ability to work and live a normal life. He presented compelling testimony as to the severe negative effects the accident had upon his ability to work, his contribution to his family's comfort and enjoyment, to his sexual life and other activities. He and his daughter testified to the significant disruption his condition caused in his marriage. Evidence of substantial future earnings loss was presented by his counsel. In light of this record, we can perceive no abuse of discretion in the lower court's denial of a new trial on the ground of an excessive verdict.

 As to the verdict, one further problem requires our attention. The lower court molded the verdict to indicate that the verdict on the § 402A claim was $500,000 to Mr. Thompson and $150,000 to his wife, while the verdicts on the negligence counts were reduced to $490,000 for the husband and $147,000 for the wife.[5] This letter reduction was the result of the jurys' finding on the comparative negligence aspects of the negligence claim, wherein it found 98% of the causal negligence was attributable to the Appellant. In view of our conclusion that the § 402A issue should not have been submitted to the jury, the verdicts based upon it cannot stand. The judgment based on the verdict must therefore be opened and the lower court is directed to re-mold the verdict to reflect only the lesser amounts due on the negligence counts.

The judgment of the lower court is reversed to the limited extent provided herein to permit a re-molding of the verdict. In all other respects the judgment is hereby affirmed.

---

5. The lower court construed the verdicts to be cumulative, so that it fixed the maximum liability of the Appellant at $500,000 on Mr. Thompson's claim and $150,000 on Mrs. Thompson's claim.