## Van Horn v. Reinhart Flynn Inc.

C.P. of Carbon County, no. 01-1794.

*Charles Shaffer,* for plaintiffs.
*Dennis P. Herbert,* for defendant Reinhart Flynn Inc.
*John W. Stahl,* for the Commonwealth.
*Michael J. O'Malley,* for defendant General Motors Corporation.

NANOVIC, *J.,* July 23, 2003—Plaintiffs are David A. Van Horn and Betty Lou Van Horn, his wife. On August 29, 1999, Mr. Van Horn sustained serious physical injuries in a one-vehicle motor vehicle accident. At the time, Mr. Van Horn was test driving a 1996 Chevrolet Tahoe owned by the defendant, Reinhart Flynn Inc., d/b/a Reinhart Ford, in a northbound direction on S.R. 2001 (locally known as Forest Inn Road). Forest Inn Road is a state highway maintained by the defendant, Com-

monwealth of Pennsylvania, Department of Transportation.

The Van Horns claim that the cruise control on the vehicle failed to disengage when Mr. Van Horn braked while rounding a left-hand curve in the road. In consequence, Mr. Van Horn was unable to complete the left turn in the road, lost control, and traveled across the east berm of the road down an embankment and into an open drainage ditch where the vehicle eventually struck the end of a metal storm drainage pipe. This pipe, and most of the drainage ditch leading away from it, are located outside of PennDOT's right-of-way.

Suit was commenced, by complaint, on August 1, 2001, against Reinhart and PennDOT. Plaintiffs' claim against Reinhart is premised on principles of strict liability and negligence. Plaintiffs claim the vehicle was defective and unreasonably dangerous due to the alleged malfunction of the cruise control and the failure of the cruise control to disengage when Mr. Van Horn applied the brakes. (Count I—strict liability.) Plaintiffs further claim that Reinhart supplied the vehicle to Mr. Van Horn at a time when it knew or should have known of the vehicle's unreasonably dangerous condition, and failed to warn of or correct this dangerous condition. (Count II—negligence.) Reinhart is a merchant engaged in the business of selling and supplying new and used motor vehicles for use by the public. Mr. Van Horn was test driving the vehicle as a prospective purchaser.

Liability against PennDOT is asserted on the theory that Forest Inn Road, at the location of the accident, was unreasonably dangerous as a result of "the curve to the

left, adjacent to a steep-sided drainage ditch leading to an unyielding open metal culvert which terminated in a metal storm drain." (Amended complaint, ¶22.)

Reinhart joined General Motors Corporation, the manufacturer of the vehicle, as an additional defendant.

Both defendants and the additional defendant have moved for summary judgment. Summary judgment is appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2(1). Summary judgment is also appropriate where the party who bears the burden of proof has failed to produce facts essential to establish a prima facie case prior to trial. Pa.R.C.P. 1035.2(2). See also, *Troup v. Tri-County Confinement Systems Inc.*, 708 A.2d 825, 826 (Pa. Super. 1998).

## I. MOTION FOR SUMMARY JUDGMENT BY PennDOT (SOVEREIGN IMMUNITY)

PennDOT claims that the Sovereign Immunity Act, 42 Pa.C.S. §§8521-8528, protects it from plaintiffs' claim.

"The Act provides that sovereign immunity is only waived for damages arising out of a negligent act where the common law or a statute would permit recovery if the injury were caused by a person not protected by sovereign immunity. 42 Pa.C.S. §8522(a). In order for the Commonwealth to be found liable, a plaintiff must also establish that the cause of action falls under one of the specifically enumerated exceptions to immunity. 42 Pa.C.S. §8522(b). Because of the clear intent to insulate

government from exposure to tort liability, the exceptions to immunity are to be strictly construed. *Kiley v. City of Philadelphia,* 537 Pa. 502, 645 A.2d 184, 185-86 (1994)." *Dean v. PennDOT,* 561 Pa. 503, 507-508, 751 A.2d 1130, 1132 (2000).[1]

In this case, we must determine whether plaintiffs' claim is actionable under the real estate exception to sovereign immunity, the only potentially relevant exception to this claim. The real estate exception states that liability may be imposed on the Commonwealth for damages caused by "[a] dangerous condition of Commonwealth agency real estate . . . including . . . highways under the

---

1. The Act, section 8522, provides in pertinent part:

"(a) Liability imposed.—The General Assembly, pursuant to Section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

"(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by: . . .

"(4) Commonwealth real estate, highways and sidewalks.—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5) [dealing with potholes and sinkholes]." 42 Pa.C.S. §8522(a), (b)(4).

jurisdiction of a Commonwealth agency." 42 Pa.C.S. §8522(b)(4). In order for the real estate exception to apply, "a claim . . . must allege that the dangerous condition 'derive[d], originiate[d], or ha[d] as its source the Commonwealth realty' itself." *Jones v. SEPTA,* 565 Pa. 211, 225, 772 A.2d 435, 443 (2001) (quoting *Snyder v. Harmon,* 522 Pa. 424, 433, 562 A.2d 307, 311 (1989)). Further, the Commonwealth may not raise sovereign immunity as a defense "when a plaintiff alleges, for example, that a substance or an object on Commonwealth realty was the result of a defect in the property or in its construction, maintenance, repair, or design." *Id.* at 225, 772 A.2d at 443-44. (footnote omitted)

The real estate exception is inapplicable to plaintiffs' claim. PennDOT has no duty to guard against dangerous conditions *off* the highway. Yet, this is the essence of plaintiffs' claim: an alleged dangerous condition arising out of the location and configuration of the road in relation to the adjacent embankment, drainage ditch and metal pipe.[2]

In *Dean,* our Supreme Court held that "the absence of a guardrail cannot be said to be a dangerous condition of the real estate that resulted in a reasonably foreseeable injury to [plaintiff]. Stated differently, the lack of a guardrail does not render the highway unsafe for the purposes

---

2. No claim has been made of a dangerous condition arising from the geometry of the curve, the speed limit or signage, stopping site distances, or that plaintiffs' injuries were in any manner caused by the pavement surface or the traveled portion of Forest Inn Road. Here, for reasons not related to the road, Mr. Van Horn's vehicle completely left the traveled portion of the road, encountered a drainage ditch and struck a metal pipe.

for which it was intended, *i.e.,* travel on the roadway." *Dean,* 561 Pa. at 511, 751 A.2d at 1134. (footnote omitted) "The Commonwealth . . . is not a guarantor of the safety of the highway, but is only exposed to liability for dangerous conditions thereof." *Id.* at 512 n.8, 751 A.2d at 1134 n.8.

In *Dean,* the plaintiff "was injured while a passenger in a car that fishtailed on a snow covered roadway and traveled over a steep embankment, where it overturned. The plaintiff alleged the Department was negligent in failing to shield the steep embankment with a guardrail and in failing to properly design, construct and maintain a safe highway." *Piazza v. PennDOT,* 786 A.2d 328, 330 (Pa. Commw. 2001), *appeal denied,* 568 Pa. 732, 798 A.2d 1294 (2002).

Plaintiffs' argument before us is simply the converse of that made in *Dean* and is controlled by the reasoning of that decision. The injuries there, as here, occurred because the motor vehicle left the portion of the highway intended for travel. Where the claimed danger or defect does not arise out of the Commonwealth's real estate, liability will not be imposed simply because the Commonwealth could have taken steps to improve its property so as to avoid or minimize injuries from dangers outside of the traveled portion of the road—in this case, on property owned by third parties. *Dean, supra,* 561 Pa. at 512, 751 A.2d at 1134; see also, *Snyder v. Harmon,* 522 Pa. 424, 435, 562 A.2d 307, 312 (1989). ("[T]he appellees next assert that the close proximity between L.R. 33060 and the deep chasm, and the unlit and deceptive appearance of the shoulder of the road presented an inherently dangerous condition. Thus, liability is not

predicated on a defective condition on Commonwealth land, but rather the knowledge of an inherently dangerous condition contiguous with Commonwealth property which the Commonwealth knows or should reasonably know and takes no action to prevent any harm from occurring. While this theory appears attractive, it is not supported by any exception to our immunity statute.")

Here, as in *Dean,* failure to erect a guardrail or to take other measures to reduce the likelihood of injury from a motor vehicle traveling off the portion of Forest Inn Road intended for travel did not create a dangerous condition of real estate for purposes of immunity. Plaintiffs' allegations that PennDOT could have erected barriers or designed the road in such a way as to mitigate the effects of driving off the road does not alter the fact that the drainage ditch, open culvert and metal pipe cannot be considered to have "derived, originated, or had as [their] source" the highway itself.

In this case, as in *Dean,* the issue is not whether a dangerous condition exists—a question of fact for a jury, but whether PennDOT would be liable for it under the real estate exception to sovereign immunity. On this issue, a question of law, we conclude PennDOT is immune from plaintiffs' claim and will grant the motion.[3]

3. To the extent PennDOT claims 53 P.S. §4104 also provides immunity from plaintiffs' claims, we disagree. Section 4104(b) protects PennDOT from liability in damages "for any injury to persons or property arising out of the issuance or denial of a driveway permit, or for failure to regulate any driveway . . . ." 53 P.S. §4104(b). As plaintiffs concede "Plaintiff is not claiming damages against PennDOT arising out of the issuance or denial of a driveway permit or for failure to regulate any driveway" (plaintiffs' brief in opposition to PennDOT's motion, p. 4), section 4104 is irrelevant to the claims raised in plaintiffs' complaint.

## II. MOTION FOR SUMMARY JUDGMENT BY REINHART

Plaintiffs have neither secured an expert nor presented an expert's report with respect to their products liability claims against Reinhart. In the absence of expert opinion testimony, Reinhart contends plaintiffs are unable and have failed to present a prima facie case of liability. In ruling on Reinhart's motion for summary judgment on this basis, we must distinguish between the nature of plaintiffs' claims for strict liability and negligence.

The cause of action in a negligence claim has been defined as "the negligent act or acts which occasioned the injury." *Saracina v. Cotoia,* 417 Pa. 80, 85, 208 A.2d 764, 767 (1965). But, see *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 325 n.7, 319 A.2d 914, 918 n.7 (1974) (because the meaning varies with the circumstances, the Supreme Court has never adopted a comprehensive definition of what constitutes a "cause of action").[4] Inherent in this meaning is the standard of reasonableness by which a defendant's conduct is to be measured.

In contrast, the cause of action under section 402A is the defect itself. *Id.* at 325, 319 A.2d at 918. "The 'rea-

---

4. In *Young v. PennDOT,* 560 Pa. 373, 376, 744 A.2d 1276, 1277 (2000), the Pennsylvania Supreme Court quoted with approval the following language from *Gift v. Palmer,* 392 Pa. 628, 630, 141 A.2d 408, 409 (1958):

"Negligence is the want of due care which a reasonable man would exercise under the circumstances. Conduct is negligent only if the harmful consequences thereof could reasonably have been foreseen and prevented by the exercise of reasonable care."

sonable man' standard in any form has no place in a strict liability case." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 96, 337 A.2d 893, 900 (1975). While the theory of liability as to how the accident occurred may be the same in both negligence and strict liability claims, the principle of strict liability simplifies plaintiff's proof by eliminating the issue of negligence from the case. *Kuisis, supra* at 325, 319 A.2d at 918.

## (a) *Strict Liability*

## Malfunction Theory of Products Liability

The plaintiff in a strict product liability case has the burden of proving (1) that the product was defective; (2) that the defect was the proximate cause of his or her injuries; and (3) that the defect existed at the time the product left the manufacturer/seller. *Ducko v. Chrysler Motors Corp.*, 433 Pa. Super. 47, 50, 639 A.2d 1204, 1205 (1994). "The questions when and where a defect originated should be left to the finder of fact so long as reasonable and well balanced minds [could] be satisfied from the evidence adduced that the defective condition existed when the machine was delivered." *Kuisis, supra* at 334, 319 A.2d at 922. (citations and quotations marks omitted)

As to proof of a defect, the malfunction theory of products liability permits evidence of a malfunction—in the absence of abnormal use or reasonable, secondary causes for the malfunction—to be used as circumstantial evidence of a defective condition.

"Generally, a plaintiff will produce direct evidence of a product's defective condition. In those cases where the

plaintiff is unable to prove the precise nature of the product's defect, however, he may, in some cases, rely on the 'malfunction theory' of product liability. *Rogers v. Johnson & Johnson Products Inc.,* 523 Pa. 176, 182, 565 A.2d 751, 754 (1989).

"The malfunction theory allows the plaintiff to use circumstantial evidence to establish a defective product. In *Rogers v. Johnson & Johnson Products Inc., supra,* the court stated:

"[The malfunction theory] permits a plaintiff to prove a defect in a product with evidence of the occurrence of a malfunction and with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction. [The plaintiff is relieved] from demonstrating precisely the defect yet it permits the trier-of-fact to infer one existed from evidence of the malfunction, of the absence of abnormal use and of the absence of reasonable, secondary causes.

"*Id.* (citations omitted) Although proof of a specific defect is not essential to establish liability under this theory, the plaintiff cannot depend upon conjecture or guesswork. 'The mere fact that an accident happens, even in this enlightened age, does not take the injured plaintiff to the jury.' *Stein v. General Motors Corp.,* 58 D.&C.2d 193, 203 (Bucks 1972), *aff'd,* 222 Pa. Super. 751, 295 A.2d 111 (1972).

"*Id.,* 427 Pa. Super. at 492, 629 A.2d at 975-76. The malfunction theory, thus, does not relieve the burden of establishing a defect. *Harkins v. Calumet Realty Co.,* 418 Pa. Super. 405, 418, 614 A.2d 699, 706 (1992). See also,

*Sochanski v. Sears, Roebuck & Co.,* 689 F.2d 45, 50 (3d Cir. 1982). However, '[t]he malfunction itself is circumstantial evidence of a defective condition, . . .' *D'Antona v. Hampton Grinding Wheel Co. Inc.,* 225 Pa. Super. 120, 124, 310 A.2d 307, 309 (1973). When a party relies on the malfunction of a product to prove that it was defective, testimony identifying the exact nature of the alleged defect is not essential. 'Although it is helpful for a plaintiff to have direct evidence of the defective condition which caused the injury or expert testimony to point to that specific defect, such evidence is *not* essential in a strict liability case based on section 402A [of the Restatements (Second) of Torts].' *Cornell Drilling Co. v. Ford Motor Co.,* 241 Pa. Super. 129, 136, 359 A.2d 822, 825 (1976). (emphasis in original)" *Ducko v. Chrysler Motors Corp.,* 433 Pa. Super. at 50-51, 639 A.2d at 1205-1206. See also, *MacDougall v. Ford Motor Co.,* 214 Pa. Super. 384, 391, 257 A.2d 676, 680 (1969) ("[T]he occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a 'defective condition' within the meaning of section 402A . . . ."), *implicitly overruled on other grounds by REM Coal Co. Inc. v. Clark Equipment Co.,* 386 Pa. Super. 401, 413 n.5, 563 A.2d 128, 134 n.5 (1989). Cf. *Surowiec v. General Motors Corp.,* 448 Pa. Super. 510, 672 A.2d 333 (1996) (trial court's improper exclusion of defendant's evidence of plaintiff's intoxication as cause of motor vehicle accident justified grant of new trial but not judgment n.o.v.).

The requirement that plaintiff negate reasonable, secondary causes applies to the evidence presented in plaintiff's case in chief.

"[I]n plaintiff's case in chief, plaintiff [need not] negate every theoretically conceivable secondary cause for the malfunction. Rather . . . the plaintiff fails to establish a prima facie case only if the plaintiff does not negate evidence of other reasonable, secondary causes or abnormal use that is actually introduced during plaintiff's case in chief. In other words . . . if, *based upon his own proof,* more than one cause could account for the accident." *Dansak v. Cameron Coca-Cola Bottling Co. Inc.,* 703 A.2d 489, 497 (Pa. Super. 1997), *appeal denied,* 556 Pa. 669, 727 A.2d 131 (1998) (emphasis in original) (quoting *Schlier v. Milwaukee Electrical Tool Corp.,* 835 F. Supp. 839, 841 (E.D. Pa. 1993)).

Further, in *Thompson v. Anthony Crane Rental Inc.,* 325 Pa. Super. 386, 395, 473 A.2d 120, 124 (1984), the court stated:

"We do not hold that a plaintiff must refute all possible explanations offered by a defendant . . . . 'It is not necessary that plaintiff prove with mathematical exactness that the accident could only have been caused in one manner to the exclusion of all other possibilities . . . but he must eliminate those other causes, if any, as were fairly suggested by the evidence . . . . And it is the duty of the trial court to determine whether or not this requirement has been met in the first instance before the issue can be submitted to the jury . . . .' [citing *Cuthbert v. Philadelphia,* 417 Pa. 610, 614-15, 209 A.2d 261, 263-64 (1965).] 242 Pa.Super. at 92, 363 A.2d at 1175."

Finally, a plaintiff who has presented a malfunction case is not necessarily precluded from proceeding upon an alternate theory of negligence. "It is altogether pos-

sible that a plaintiff's injuries could be caused jointly by a defective product and also by third-party negligence so long as the negligence does not constitute a supervening cause of the malfunction." *Rogers v. Johnson & Johnson Products Inc.,* 523 Pa. 176, 184-85, 565 A.2d 751, 755 (1989). With respect to abnormal use, "[w]hen a malfunction occurs, a concurrent abnormal use of the machine forecloses an inference of a defective condition only if the abnormal use itself contributed to the malfunction." *Kuisis,* 457 Pa. at 330, 319 A.2d at 920.

The evidence in this case indicates that Mr. Van Horn obtained the vehicle from Reinhart on August 28, 1999, the day before the accident. The vehicle was received by Reinhart on a trade-in on March 15, 1999, at which time it had 57,777 miles on the odometer. The vehicle was last serviced and inspected on March 19, 1999, and then driven an additional 1,502 miles before being turned over to Mr. Van Horn. There is no evidence that suggests Mr. Van Horn was using the vehicle abnormally at the time of the accident. Defendant's argument that plaintiffs claim that Forest Inn Road was defective and unreasonably dangerous and thereby presented a reasonable, secondary cause of the accident is foreclosed by the reasoning of *Rogers, supra* (use of the malfunction theory to prove a defect does not relieve the supplier from liability simply because another concurring cause is also responsible for producing injury).

Under the circumstances, at this stage of the proceedings we believe plaintiffs' evidence of a claim for strict products liability is sufficient to withstand defendant's motion for summary judgment. Defendant's motion will be denied.

## (b) *Negligence*

The elements, defenses, and measures of proof for negligence are different from those in a strict liability claim. In order to establish a prima facie cause of action in negligence, the plaintiff must prove (1) the existence of a duty on the part of the defendant to conform to a certain standard of conduct with respect to the plaintiff; (2) a breach of that duty; (3) a reasonably close causal connection between the defendant's conduct and some resulting injury to the plaintiff; and (4) actual loss or damages sustained by the plaintiff as a direct result of that harm. See *e.g., Atcovitz v. Gulph Mills Tennis Club Inc.,* 571 Pa. 580, 586, 812 A.2d 1218, 1222 (2002).

Except as the doctrines of res ipsa loquitur or exclusive control may apply, "a plaintiff asserting liability on grounds of negligence must connect injury with a specific defect in the manufacture or design of a product." *MacDougall v. Ford Motor Co.,* 214 Pa. Super. at 387, 257 A.2d at 678. Mere proof of a malfunction is insufficient. Liability under section 402A is dependent "on a lack of fitness in the defendant's product, [the same] as in the case of an action for breach of warranty, rather than on the breach of a particular duty of care, . . . as in the case of an action for negligence." *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. at 329, 319 A.2d at 918.

In *MacDougall v. Ford Motor Co., supra,* the court found:

"The evidentiary requirements of negligence law demand proof that injury is proximately caused by a specific defect in design or construction because liability hinges upon whether the accident could have been

avoided by the exercise of reasonable care. In contrast, the concern of both section 402A and warranty law is with the fitness of the product, not the conduct of the producer as measured by due care. While proof of a mechanical malfunction does not support an inference of the absence of due care in the construction or design of equipment, it is circumstantial evidence of the unfitness of the equipment. Accordingly, we hold that the occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a 'defective condition' within the meaning of section 402A, as it is evidence of lack of fitness for warranty liability." 214 Pa. Super. at 391, 257 A.2d at 680.

A claim for strict liability, as already stated, does not require that plaintiff prove a specific defect to prevail, although doing so will likely strengthen the claim.

It is because of the need for plaintiffs in their negligence claim to identify the specific defect which caused the cruise control to allegedly malfunction and, then, to prove how defendant's conduct deviated from the requisite standard of care and that the deviation was a substantial factor in causing the accident such that defendant can be held responsible for plaintiffs' injuries, that plaintiffs' claim is vulnerable to attack. This burden, in this case, we believe requires expert testimony.

"Expert testimony [is] necessary when the subject matter of the inquiry is one involving special skills and training not common to the ordinary layperson." *Storm v. Golden,* 371 Pa. Super. 368, 376, 538 A.2d 61, 64 (1988), *appeal denied,* 524 Pa. 630, 574 A.2d 71 (1989).

"Frequently, the jury, or the court trying a case without a jury, is confronted with issues which require scientific or specialized knowledge or experience in order to be properly understood. Certain questions cannot be determined intelligently merely from the deductions made and inferences drawn from practical experience and common sense. On such issues, the testimony of one possessing special knowledge or skill is required in order to arrive at an intelligent conclusion. . . . In these matters, where laymen have no knowledge or training, the court and jury are dependent on the explanations and opinions of experts.

"In a logical and fundamental sense, a verdict is worth only as much as the evidence upon which it is based. In a complex case, a jury, in order to reach an intelligent conclusion, is dependent on expert testimony. If the jury is enlightened, it will reach the right verdict. Unaided by the explanations and opinions of those with specialized knowledge or skill, the ultimate conclusion might just as well be based on evidence presented in a language unfamiliar to the jury. Unless the jury is comprised of experts in the field, the verdict is based on mere conjecture. Such a verdict is worthless." *Dion v. Graduate Hospital of University of Pennsylvania,* 360 Pa. Super. 416, 425, 520 A.2d 876, 881 (1987). (citation omitted)

"Conversely,

"[I]f all the primary facts can be accurately described to a jury, and if the jury is as capable of comprehending and understanding such facts and drawing correct conclusions from them as are witnesses possessed of special training, experience or observation, then there is no need

for the testimony of an expert." *Young v. PennDOT,* 560 Pa. 373, 377, 744 A.2d 1276, 1278 (2000) (quoting *Reardon v. Meehan,* 424 Pa. 460, 465, 227 A.2d 667, 670 (1967)).

In this case, other than plaintiffs' claim that the cruise control failed to disengage when Mr. Van Horn stepped on the brake pedal, we do not know what the specific cause of this failure was. We do not know whether the claimed defect is a design defect or a manufacturing defect. We do not know what inspections or tests are required to discover the specific defect involved, whether such inspections or tests are extraordinary or routine, or even whether the defect was discoverable in advance of the accident. Was the defect a latent or hidden defect and one not able to be discovered upon reasonable inspection of the defendants? Again, we don't know. The answers are not "so simple, and the lack of skill or want of care so obvious, as to be within the range of ordinary experience and comprehension of even non professional persons." *Brannan v. Lankenau Hospital,* 490 Pa. 588, 598, 417 A.2d 196, 201 (1980). Nor are the answers within the ability of the average person of ordinary intelligence to determine on their own.

The answers to these questions, however, are critical to proving plaintiffs' claim. It is for this reason and because the answers require technical knowledge, acquired by study and experience, that an expert is necessary and required to prove plaintiffs' case in chief on negligence. Absent the assistance and explanation of a qualified expert, the jury's verdict on this claim can be nothing more than speculation or conjecture. See *Schmoyer v. Mexico Forge Inc.,* 437 Pa. Super. 159, 163, 649 A.2d 705, 707

(1994) ("the trial court has a duty to prevent questions from going to the jury which would require it to reach a verdict based on conjecture, surmise, guess or speculation."). Cf. *Masgai v. Franklin,* 787 A.2d 982, 985 (Pa. Super. 2001) ("[B]ecause 'the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson,' a medical malpractice plaintiff generally must produce the opinion of a medical expert to demonstrate the elements of his cause of action."); *Storm v. Golden, supra* (expert testimony ordinarily necessary to establish legal malpractice).

Summary judgment is proper when an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action, which, in a jury trial, would require the issues to be submitted to a jury. *Young v. PennDOT, supra,* 744 A.2d at 1277. "Where a plaintiff fails to produce an expert in a situation requiring one, the court should grant a defendant's motion for summary judgment." *Masgai v. Franklin, supra* at 985. Accordingly, we will grant defendant's motion on this claim.

## III. MOTION FOR
## SUMMARY JUDGMENT BY GMC

Reinhart's joinder complaint is in standard form, incorporates the allegations of plaintiffs' complaint, and asserts the same claims of negligence and strict liability against GMC as plaintiffs have made against Reinhart. GMC raises the same issues in its motion for summary

judgment against Reinhart as Reinhart raised against plaintiffs, and our decision will be the same for the same reasons.

Additionally, GMC claims Reinhart's sale of the vehicle for salvage prior to institution of plaintiffs' suit has resulted in spoliation of evidence and prevented GMC from inspecting the vehicle and verifying system functionality for the braking, cruise control and electrical systems of the vehicle. Reinhart's response alleges that no request or notice to preserve the evidence was ever made by plaintiffs and that, prior to the salvage of the vehicle, it had no knowledge or reason to believe the Van Horns were claiming the accident was caused by other than driver error.

"Spoliation is an exclusionary doctrine grounded in principles of equity." *Cohen v. Chateau at Camelback,* 37 D.&C.4th 317, 319 (Monroe Cty. 1997). There is no per se rule that a party has an inflexible duty in a products liability action to preserve the product for future inspection or forfeits its claim. Instead, a three-pronged analysis is required in determining the proper sanctions, if any, for spoliation of evidence: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct." *Schroeder v. PennDOT,* 551 Pa. 243, 250, 710 A.2d 23, 27 (1998).

Neither party has extensively developed the record or analyzed the relevant factors in determining whether GMC's request for dismissal is warranted on grounds of spoliation. Reinhart's response to the motion that it was

unaware prior to the salvage of the vehicle that the plaintiffs claimed the accident was caused by a defect in the vehicle, and that Reinhart received no prior request or notice to preserve the evidence, is certainly relevant to the "degree of fault" consideration.[5] There is no evidence that salvaging of the vehicle was undertaken in bad faith or for ulterior motives.

On the other hand, GMC's claim of prejudice is a real one. The unavailability of the vehicle for inspection has undeniably deprived GMC of an opportunity "to have an expert examine the [vehicle] and to testify, if appropriate, that a defect did not cause the [vehicle] to malfunction." *Martin and Greenspan v. Volkswagon of America,* 1989 WL 81296 (E.D. Pa. July 13, 1989) (no. civ. a. 88-8261). Indeed, GMC's expert has opined that Reinart's failure to preserve the vehicle has prevented GMC's ability to verify system functionality.[6]

---

5. There is no evidence of the circumstances surrounding the determination that the vehicle was a total loss and should be salvaged, and when this occurred. We do note, however, that plaintiffs' action was not commenced until August 1, 2001, almost two years after the accident.

6. Because the identity of the manufacturer of the vehicle is not in dispute, this is not a case warranting dismissal for failure to preserve evidence critical to identifying a responsible party. Cf. *Roselli v. General Electric Co.,* 410 Pa. Super. 223, 599 A.2d 685 (1991) (plaintiff failed to preserve shattered glass carafe thereby precluding defendant from verifying the product manufacturer of the carafe for indemnity purposes). Further, to the extent Reinhart may intend to argue a design defect, the prejudice claimed by GMC is lessened. *Schroeder, supra* (design defects common to all trucks of the same make and model; therefore the need to examine the actual truck to prepare a defense is not as great as when a manufacturing defect is claimed, because all trucks of the same make and model would contain the same defect); see also, *O'Donnell v. Big Yank Inc.,* 696 A.2d 846 (Pa. Super. 1997).

In *Long v. Yingling,* 700 A.2d 508 (Pa. Super. 1997), *appeal denied,* 555 Pa. 725, 725 A.2d 182 (1998), the court recognized the public policies underlying the theory of spoliation as being "(1) to prevent fraudulent claims; and (2) to remove plaintiffs from the position of deciding whether the availability of the allegedly defective product would help or hurt their case." Here, as previously stated, there is no reason to suspect that Reinhart's claim is fraudulent. Nor has Reinhart benefited from the unavailability of the vehicle. To the contrary, in this case, where plaintiffs do not have a direct cause of action against GMC because of the running of the applicable statute of limitations (*Dickson v. Lewandowski,* 228 Pa. Super. 57, 323 A.2d 169 (1974)), Reinhart must shoulder entirely the burden of proving liability against GMC. *Wnek v. Boyle,* 374 Pa. 27, 96 A.2d 857 (1953). Without itself having examined or inspected the vehicle after the accident and being able to identify a specific defect, Reinhart's reliance on the malfunction theory to prove a defect, while at the same time defending plaintiffs' claim on the basis of driver error, will weaken, if not defeat, Reinhart's ability to satisfy its burden of proof with respect to GMC. *Thompson v. Anthony Crane Rental Inc.,* 325 Pa. Super. at 394, 473 A.2d at 125.

Under the circumstances presented, we do not believe it would be appropriate to dismiss Reinhart's claim on the basis of spoliation of evidence. Reinhart's conduct has not resulted in a tactical advantage justifying this extreme sanction. Additionally, the burden of proof applicable to Reinhart's claim against GMC will serve to protect GMC against an unfounded claim.